**FILED UNDER SEAL**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| AUTOSCRIBE CORPORATION | § § § | Case No. 2:23-cv-0349-JRG (Lead Case) |
| v. | § § | JURY TRIAL DEMANDED |
| REPAY HOLDINGS CORPORATION, et al. | § § | FILED UNDER SEAL |
| AUTOSCRIBE CORPORATION | § § § | |
| v. | § § | Case No. 2:23-cv-0364-JRG (Member Case) |
| FORTIS PAYMENT SYSTEMS, LLC | § § § | |

**M&A VENTURES, LLC'S SUPPLEMENTAL MOTION TO DISMISS FOR IMPROPER VENUE OR, IN THE ALTERNATIVE, TO TRANSFER VENUE**

**TABLE OF CONTENTS**

I.   Introduction ............................................................................................................... 1

II.  Additional Factual Background............................................................................... 2

    A.   M&A Ventures Exists as a Distinct Corporate Entity...................................... 2

    B.   M&A Ventures Does Not Have a Place of Business Located in the Eastern District Texas ................................................................................................... 3

    C.   M&A Ventures Has Significant Connections to Georgia ............................... 3

III. Statement of Issues Under Local Rule CV-7(a)(1) ................................................ 4

IV. Argument................................................................................................................. 4

    A.   Venue is Improper Because M&A Ventures Does Not Have a Place of Business Within the District........................................................................... 4

    B.   The Place of Business of CDT Technologies Cannot be Imputed to M&A Ventures...................................................................................................... 6

    C.   In the Alternative, the Case Should be Transferred to the Northern District of Georgia .................................................................................................... 9

V.   Conclusion............................................................................................................. 12

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
937 F. Supp. 2d 867, 877 (E.D.Tex. Mar. 28, 2013) ...............................................................10

*Audra Group, LP v. Victoria Secret Stores, L.L.C.*,
6 F.4th 1283 (Fed. Cir. 2021) ...................................................................................................6

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006) .....................................................................................................7

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)..............................................................................................5, 6

*Dickson Marine Inc. v. Panalpina, Inc.*,
179 F.3d 331 (5th Cir. 1999) .....................................................................................................7

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)................................................................................................11

*Immanuel v. Cable News Network, Inc.*,
No. 4:21-CV-00587, 2022 WL 1748252 (E.D. Tex. May 31, 2022)..........................................9

*Jerger v. D&M Leasing Dallas*,
No. 4:20-cv-00309, 2020 WL 4335733 (E.D. Tex. July 28, 2020)...........................................4

*Sightline Payments LLC v. Everi Holdings Inc.*,
6:21-CV-01015-ADA, 2022 WL 2078215 (W.D. Tex. June 1, 2022) ......................................6

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
581 U.S. 258 (2017)....................................................................................................................5

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................................................4, 9

28 U.S.C. § 1406(a) .......................................................................................................................4, 9

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(3) ...........................................................................................4

Federal Rule of Civil Procedure 45 ....................................................................................................9

Defendant M&A Ventures, LLC ("M&A" or "M&A Ventures") files this Motion to Dismiss for Improper Venue under Federal Rules of Civil Procedure 12(b)(3), and 28 U.S.C. § 1406(a), or in the alternative, Motion to Transfer Venue to the U.S. District Court for the Northern District of Georgia under 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

Autoscribe's Amended Complaint for Patent Infringement is a last ditch effort by the Plaintiff to rescue their case from its jurisdictional and venue issues which were marked by Repay Holdings Corp. and Repay Holdings, LLC's Motion to Dismiss and confirmed through subsequent venue discovery. However, M&A cannot provide a life vest to the Plaintiff here. The facts demonstrate the M&A does not have a regular and established place of business in the District. Autoscribe's only hook into the District is the office of CDT Technologies Ltd. ("CDT Technologies") located in The Colony. This office location is a regular and established place of business of CDT Technologies. The place of business of one corporation cannot be imputed to the other simply because the companies are related; there must be demonstration of a lack of corporate separateness. Autoscribe has not demonstrated such a lack of corporate separateness between M&A and CDT Technologies. Lacking any regular and established place of business, venue is improper in this District, and the case should be dismissed. In the alternative, the case should be transferred to the Northern District of Georgia for the convenience of the witnesses, a majority of whom are located in Georgia or otherwise along the East Coast.

The parties have agreed to incorporate prior argument and evidence from the pending dismissal/transfer briefing. (Dkt. 57). M&A hereby incorporates the legal standards and factual background laid out in the pending Motion to Dismiss and supporting Reply. (Dkt. 15; Dkt. 47-2).

## II.    ADDITIONAL FACTUAL BACKGROUND

### A.  M&A Ventures Exists as a Distinct Corporate Entity

M&A is a limited liability company organized under the laws of Georgia with its headquarters located in Atlanta, Georgia. Exhibit A ¶ 5 (Declaration of Tyler Dempsey). M&A maintains its primary office at its headquarters in Atlanta, Georgia. *Id.* at ¶ 6. M&A exists as a distinct corporate entity and is a subsidiary of named Defendant, Repay Holdings, LLC which itself is an indirect corporate subsidiary of the third named Defendant, Repay Holdings Corporation. *Id.* at ¶ 7.

M&A maintains its own set of corporate officers. *Id.* at ¶ 8. Some of these officers are common to other Repay entities, including the Repay parent entities and other Repay subsidiary entities. *Id.* However, there is not complete overlap among corporate officers of all Repay entities. *Id.* M&A maintains corporate bank accounts separate from other Repay parent and subsidiary entities, through which M&A's expenses are paid. *Id.* at ¶ 9. A Legal Entity Identifier, or "LEI," is a unique identification code which identifies the precise entity on either side of a financial transaction. *Id.* at ¶ 10. M&A possesses a unique LEI identifier which identifies M&A alone, and not other Repay entities, as party to particular transactions. *Id.*

M&A provides electronic payment processing services and related products to customers across the United States. *Id.* at ¶ 6. M&A has entered into a Management Services Agreement with Repay Management Services, LLC whereby Repay Management provides management, personnel, and administrative services to M&A. Exhibit B. CDT Technologies, Ltd., another subsidiary entity of Repay Holdings, LLC, has also entered as a party to the agreement. Exhibit C.

### B. M&A Ventures Does Not Have a Place of Business Located in the Eastern District Texas

M&A does not have a physical office or other facility located in the Eastern District of Texas. Exhibit A ¶ 11. M&A does not have any employees located in the District. *Id.* at ¶ 11, 15. M&A conducts electronic payment processing for customers located in the District. *Id.* at ¶ 11. However, any payment processing conducted by M&A for customers in the District is not conducted through a physical place of business there. *Id.* The physical office identified in the Complaint located at 5830 Crescent Drive, Suite, The Colony, TX 75056, is leased and maintained by CDT Technologies Ltd. alone. *Id.* at ¶ 12. M&A does not lease, own, or conduct business through The Colony location. *Id.* at ¶ 11-12. The employees assigned to The Colony location are not employed by M&A. Exhibit E at 8-9.

M&A utilizes the payment processing system alleged of infringement – the "Payment API" – to process electronic payments for customers. Exhibit A ¶ 6, 15.  M&A does not, however, use The Colony location to design, implement, or perform the "Payment API." *Id.* Further, no employees of other Repay entities assigned to The Colony location perform work related to the "Payment API." *Id.*

### C. M&A Ventures Has Significant Connections to Georgia

M&A is a company organized under the laws of Georgia having its headquarters in the Northern District of Georgia. *Id.* at ¶ 5. A significant number of employees who conduct work on behalf of M&A are located in Georgia. *Id.* at ¶ 6. Of those employees, Repay Holdings, LLC and Repay Holdings Corp. have identified witnesses possessing knowledge of the accounting, financials, and revenue related to the accused product. *Id.* at ¶ 16. These witnesses – Timothy Murphy and Christina Bracken – are both located in Georgia. *Id.* Repay Holdings Corp. and Repay Holdings, LLC have also identified witnesses having information related to the marketing

3

efforts for the Accused Products. *Id.* at ¶ 17. Both witnesses are located in the Northern District of Georgia. *Id.* Repay Holdings Corp. and Repay Holdings, LLC have identified Jake Moore as the witness having knowledge of the potential acquisition of Autoscribe by Repay. Exhibit F at 3. Mr. Moore is located in Georgia. Exhibit D ¶ 17.  Last, two of the witnesses identified by Repay Holdings Corp. and Repay Holdings, LLC as potential witnesses having information related to the design and functionality of the Accused Products are located in Georgia. Exhibit A ¶ 18. M&A has not identified any additional potential witnesses other than those already identified, none of which are located in the Eastern District of Texas. *Id.* at ¶ 19.

## III.    STATEMENT OF ISSUES UNDER LOCAL RULE CV-7(A)(1)

1.      <u>Whether venue is proper in the Eastern District of Texas.</u> M&A does not reside in Texas and has no regular and established place of business in the Eastern District of Texas. Accordingly, the requirements of 28 U.S.C. § 1400(b) are not met here and the Complaint should be dismissed for improper venue. *See* FED. R. CIV. P. 12(b)(3); 28 U.S.C. § 1406(a).

2.      <u>Whether, in the alternative, venue should be transferred to the Northern District of Georgia in the interest of justice or for the convenience of parties and witnesses.</u> If the case is not dismissed, M&A requests that it be transferred to the Northern District of Georgia, where M&A is incorporated and headquartered, witnesses are located, there is factual connection to the case, and the case could have been brought. *See* 28 U.S.C. § 1406(a); 28 U.S.C. § 1404(a).

## IV.    ARGUMENT

### A. Venue is Improper Because M&A Ventures Does Not Have a Place of Business Within the District

Autoscribe has failed to meet its burden of establishing that venue is proper in this District, and thus, the Court should dismiss this case. *See, Jerger v. D&M Leasing Dallas*, No. 4:20-cv-00309, 2020 WL 4335733, at *2 (E.D. Tex. July 28, 2020) ("[T]he burden of sustaining venue

will be on [the] Plaintiff."). Namely, Autoscribe has failed to establish that M&A has a "regular and established place of business" in the District. Under 28 U.S.C. § 1400(b), a plaintiff may bring a patent-infringement action: (1) where the defendant resides or (2) where the defendant has committed acts of infringement and has a regular and established place of business. There should be no dispute that M&A does not "reside" in the District as a corporate defendant resides only in its state of incorporation. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 270 (2017). M&A is incorporated in Georgia and thus, only "resides" in Georgia.

Autoscribe's only remaining ground to establish venue is to demonstrate that M&A has committed acts of infringement *and* has a regular and established place of business in the District. Autoscribe has failed to do so. The Federal Circuit has established that to have a "regular and established place of business" under the second prong of § 1400(b), "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). In its Amended Complaint, Autoscribe points to The Colony location as the only alleged "regular and established place of business" in the District. (Dkt. 36 at 2). However, The Colony location Autoscribe points to is not a location "of the defendant" here. The Colony location is leased and maintained by a distinct corporate entity not named in this suit – CDT Technologies. Exhibit A ¶ 12. M&A does not own or lease The Colony location. *Id.* M&A does not have employees at The Colony location. *Id.* at ¶ 11; Exhibit E at 8-9. M&A does not conduct business out of The Colony location. *Id.* at ¶ 11. No person working in The Colony office performs work relating to the accused Payment API product in this case. *Id.* at ¶ 15.

Any additional support included in Autoscribe's Complaint is similarly lacking. Autoscribe points to a SEC document of Repay Holdings Corp. which Autoscribe alleges

identifies The Colony location as "one of Defendant's 'principal facilities,' and at 14,100 square feet, it is Defendant's largest facility." (Dkt. 36 at 2.). The document Autoscribe points to is not an M&A corporate document, but rather a SEC document of M&A's indirect parent entity. There is nothing in the document which ties M&A to that location. Autoscribe further identifies signage at The Colony location. (Dkt. 36 at 2.). This signage does not identify M&A at all. Even if the signage had identified M&A, "the mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *In re Cray*, 871 F.3d at 1364. Last, Autoscribe points to job postings for The Colony location. These are not M&A job postings. M&A is does not have employees and does not conduct business at The Colony location. *Id.* at ¶ 11; Exhibit E at 8-9.

**B.  The Place of Business of CDT Technologies Cannot be Imputed to M&A Ventures**

It seems likely, given the positions previously taken, that Autoscribe is seeking to impute the place of business of a different entity to M&A to establish venue. In particular, it appears that Autoscribe is seeking to impute The Colony location, a regular and established place of business of CDT Technologies, to its sister entity, M&A. The threshold for imputation of the place of business of one company to another, related company is whether the companies have maintained corporate separateness. *Audra Group, LP v. Victoria Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 334–35 (1925); 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3823 & nn.25–26 (4th ed.)). Where related companies have maintained corporate separateness, the place of business is not imputed to the other for venue purposes. *Audra Group*, 6 F.4th at 1289.

Where a parent and subsidiary maintain corporate separateness, there is a "heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent." *Id.*  (citing *Adm'rs of Tulane Educ. Fund. v. Ipsen, S.A.*, 450 F.App'x 326, 331 (5th Cir.

6

2011)). Prior briefing on this issue has established that courts applying Fifth Circuit law in the venue context have applied the more stringent alter ego theory of veil piercing. *Sightline Payments LLC v. Everi Holdings Inc.*, 6:21-CV-01015-ADA, 2022 WL 2078215, *3 (W.D. Tex. June 1, 2022). The analysis is not significantly different for piercing the veil between two "sister" entities. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 339 (5th Cir. 1999). The relevant determination is ultimately whether the evidence demonstrates one corporation has exerted sufficient control to make the other its alter ego. *Id.* at 338. A non-exhaustive list of factors that courts may consider in analyzing alter ego include: (1) common stock ownership; (2) common directors or officers; (3) common business departments; (4) consolidated financial statements; (5) financing of one entity by the controlling entity; (6) causation of incorporation of one entity by the controlling entity; (7) operation of the subsidiary entity with grossly inadequate capital; (8) the controlling entity pays salaries and expenses of the other entity; (9) entity receives no business except that given by the controlling entity; (10) controlling entity uses property of the other entity as its own; (11) daily operations of the two corporations are not kept separate; (12) the entities do not observe corporate formalities. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006). Factors 5 through 12 demonstrate that M&A and CDT Technologies operate as distinct corporate entities:

*Factor 5*: M&A does not finance CDT Technologies. Exhibit A ¶ 13.

*Factor 6*: M&A did not cause the incorporation of CDT Technologies. *Id.* at ¶ 14. CDT Technologies' predecessor entity, Ventanex, operated as an independent entity prior to its acquisition by Repay Holdings, LLC. *Id.* CDT's corporate form was maintained after the acquisition. *Id.* at ¶ 13-14.

*Factor 7*: CDT Technologies does not operate with grossly inadequate capital. *Id.* at ¶ 14.

7

*Factor 8*: M&A does not pay the expenses of CDT Technologies. *Id.* at ¶ 13.

*Factor 9*: CDT Technologies is not limited to the business it receives from M&A. CDT Technologies possesses its own customers and services those customers through The Colony Office location. *Id.* at ¶ 12-13. In fact, as explained above, CDT Technologies was an operating company with own revenue, customers, and product lines before becoming M&A's sister company. M&A does not direct any of its business operations through CDT Technologies or through The Colony location. *Id.* at ¶ 11.

*Factor 10*: M&A does not use CDT Technologies' property as its own. *Id.* at ¶ 11-12. As has already been stated, CDT Technologies leases the office in The Colony. *Id.* at ¶ 12. M&A does not use The Colony location to conduct business. *Id.* at ¶ 11-12.

*Factor 11*: The daily operations of M&A and CDT Technologies are kept separate. *Id.* at ¶ 13. In fact, the two businesses process payments with different software and technology. *Id.* at ¶ 15; Exhibit G (Deposition of Tyler Dempsey) at 52:24-53:11, 130:2-22.

*Factor 12*:  M&A and CDT Technologies observe corporate formalities. M&A and CDT operate as distinct corporations. *Id.* at ¶ 13. M&A is incorporated in Georgia and operates out of its headquarters in Atlanta, Georgia. *Id.* at ¶ 5. CDT Technologies is incorporated in Texas and operates out of its headquarters at The Colony location. Exhibit E at 7. M&A maintains its own set of corporate officers which are not completely identical to CDT Technologies' corporate officers. Exhibit A at ¶ 8.  M&A maintains its own separate bank accounts. *Id.* at ¶ 9. M&A and CDT Technologies enter into agreements with each other and other corporate affiliates in observance of the separate nature of the corporations. *See* Exhibit B; Exhibit C.

The weight of these factors demonstrates that M&A does not exert sufficient control over CDT Technologies such that CDT Technologies merely operates as an alter ego. Thus, it would

8

be improper to ignore corporate separateness, pierce the corporate veil, and impute CDT Technologies' place of business to M&A.

### C. In the Alternative, the Case Should be Transferred to the Northern District of Georgia

If the district court finds a case has been filed in the wrong district, the district court may, in the interest of justice, transfer the case to a district in which the case could have been brought in order to prevent "waste of time, energy, and money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." 28 U.S.C. § 1406(a); *Immanuel v. Cable News Network, Inc.*, No. 4:21-CV-00587, 2022 WL 1748252, at *7 (E.D. Tex. May 31, 2022) (citations omitted). Proper venue exists in the Northern District of Georgia as all named Defendants are headquartered and have a regular and established place of business in Atlanta. Exhibit D ¶ 4; Exhibit A ¶ 5-6.

In the alternative, if the Court should find venue is proper, the Court should still transfer to the Northern District of Georgia as it serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The facts established through prior briefing clearly demonstrate why the Northern District of Georgia is a more convenient forum. The public and private interest factors which exist as to Repay Holdings, LLC and Repay Holdings Corp. similarly exist here.

#### a. Relative Ease of Access to Sources of Proof

The relevant documents identified by M&A are consistent with those identified by Defendants Repay Holdings Corp. and Repay Holdings, LLC. Additional documents identified by M&A include M&A's revenue, sales, and marketing documents related to the "Payment API." These documents are generated and easily accessible from M&A's corporate headquarters located in the Northern District of Georgia. This factor weighs in favor of transfer.

#### b. Availability of Compulsory Process to Secure the Attendance of Witnesses

9

Through Initial Disclosures of the parties, third-party witnesses have been identified located in Arizona, Virginia, and Pennsylvania. None of these identified third-party witnesses are located within 100 miles of either district. F.R.C.P. 45. This factor is neutral.

### c. Cost of Attendance

M&A has identified no additional potential witnesses other than those identified by Repay Holdings, LLC and Repay Holdings Corp, which includes seven witnesses located in Georgia and four witnesses otherwise located otherwise along the East Coast. As M&A is headquartered in Georgia and Autoscribe is headquartered in Florida, it is likely that any additional potential witnesses would also be located along the East Coast. Not a single potential witness located in the District has been identified by any named defendant. Thus, in consideration of the travel cost of the witnesses, the Northern District of Georgia provides a more convenient forum. This factor weighs in favor of transfer.

### d. Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

The present case is not so far advanced as to create practical difficulties for the parties. The parties have agreed to limited briefing on the present Motion as to conjoin and expedite this process with the already pending Motion to Dismiss. (Dkt. 57; Dkt. 59). The deadlines which have already passed, including exchange of preliminary infringement and preliminary invalidity contentions, have proceeded without the Court's intervention. These contentions could be easily carried over to the case proceeding in the Northern District of Georgia. At most, this factor is neutral. Of the two additional lawsuits filed by Autoscribe alleging infringement of the '621 patent, only one remains pending. Furthermore, the pending nature of the additional case should not weigh against transfer as that case is on the same timeline as the present case and thus the Court has no more knowledge of *this* patent through the co-pending case than the present case.

10

*See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 877 (E.D.Tex. Mar. 28, 2013). This factor is neutral.

### e.   *Administrative Difficulties Flowing from Court Congestion*

Current statistics place the median time from filing to trial in the Eastern District of Texas at 21.4 months and in the Northern District of Georgia at 31 months.[1] M&A does not dispute that this is a difference of roughly 10 months. However, this factor should be given little weight as it is the most speculative and case-disposition statistics may not always tell the whole story. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).

### f.   *Local Interest in Having Localized Interests Decided at Home*

M&A is organized under the laws of Georgia and headquartered in its capital city. A significant number of employees who conduct work on behalf of M&A are based in Georgia. Exhibit A ¶ 6. M&A has identified those same relevant witnesses which were identified by Repay Holdings, Corp. and Repay Holdings, LLC, a number of which are located in Georgia. *Id.* at ¶ 16-18. As was stated for the other Repay parent entities, the Northern District of Georgia has a vested interest in overseeing allegations against one of its own corporations, involving its own citizens as witnesses, and with an outcome that could affect the employer of many of its taxpayers. This factor weighs in favor of transfer.

### g.   *Familiarity of the Forum with the Law That Will Govern the Case*

---

[1] https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/12/31-3

██████████████████████████████████████████████████

████████████████████████████ This factor weighs in favor of transfer.

h. *Avoidance of Unnecessary Problems of Conflict of Laws or In the Application of Foreign Law*

As previously stated, this factor is neutral because federal patent law and ████████████

████████████████████████ apply under either district's choice of law analysis.

## V.    CONCLUSION

This case should be dismissed because venue is improper as to M&A which neither resides in nor has a regular and established place of business in the District. Any imputation of CDT Technologies' in-District office location to M&A would be improper as the companies observe corporate formalities and maintain corporate separateness. In the alternative, the case should be transferred for the convenience of the parties and witnesses, a majority of whom are located in Georgia or otherwise along the East Coast.

For these reasons, M&A respectfully requests this Court grant M&A's Motion to Dismiss for Improper Venue under Federal Rules of Civil Procedure 12(b)(3), and 28 U.S.C. § 1406(a), or in the alternative, Motion to Transfer Venue to the U.S. District Court for the Northern District of Georgia under 28 U.S.C. § 1404(a).

Dated: February 9, 2024                              */s/ David H. Harper*

David H. Harper (Lead Counsel)
Texas Bar No. 09025540
david.harper@haynesboone.com
Stephanie N. Sivinski
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Marron E. Frith
TX Bar No. 24137884
marron.frith@haynesboone.com

12

HAYNES AND BOONE, LLP
2801 N. Harwood Street
Suite 2300
Dallas, Texas 75201
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**COUNSEL FOR DEFENDANTS REPAY
HOLDINGS CORPORATION AND REPAY
HOLDINGS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on February 9, 2024, a true and correct copy of the foregoing was served on all counsel of record via the Court's email.

/s/ *David H. Harper*

## CERTIFICATE OF AUTHORIZATION

I hereby certify that on February 9, 2024, a motion to seal this document and exhibits was filed separately and immediately before filing this document.

/s/ *David H. Harper*

13