# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| AUTOSCRIBE CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 2:23-CV-00349-JRG |
| | § | **FILED UNDER SEAL** |
| M&A VENTURES, LLC. | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Supplemental Motion to Dismiss for Improper Venue or, In the Alternative, to Transfer Venue (the "Motion to Dismiss") filed by Defendant M&A Ventures, LLC ("M&A"). (Dkt. No. 67.) Having considered the Motion to Dismiss, related briefing, and relevant authority, the Court finds that the Motion to Dismiss should be **GRANTED** and the case **TRANSFERRED** to the Northern District of Georgia for the reasons set forth below.

## I.      BACKGROUND

### A.  Procedural Background

On July 27, 2023, Plaintiff Autoscribe Corporation ("Plaintiff") brought suit against Repay Holdings Corporation and Repay Holdings, LLC (collectively, the "Repay Defendants"), alleging that the Repay Defendants infringe U.S. Patent No. 11,620,621, both directly and indirectly. (Dkt. No. 1.)

On October 10, 2023, the Repay Defendants filed a motion to dismiss. (Dkt. No. 15.) On October 19, 2023, the Court granted Plaintiff's Unopposed Motion for Leave to Conduct Expedited Jurisdictional Discovery. (Dkt. No. 23.) On January 8, 2024, Plaintiff filed its Amended

Complaint, adding M&A as a defendant. (Dkt. No. 36.) On February 6, 2024, the Court granted

the parties' request to enter a supplemental briefing schedule to allow M&A to join the Repay

Defendants' motion to dismiss. (Dkt. No. 59.) On February 12, 2024, Defendant M&A filed the

instant Motion to Dismiss alleging improper venue under Federal Rule of Civil Procedure 12(b)(3)

and 28 U.S.C. § 1400 (Dkt. No. 67), to which Plaintiff filed a response on February 23, 2024 (Dkt.

No. 72).

On July 16, 2024, Plaintiff and the Repay Defendants entered a stipulation of dismissal,

dismissing Plaintiff's claims against the Repay Defendants without prejudice. (Dkt. No. 88.)  The

Court held a hearing on the Motion to Dismiss on July 17, 2024. (Dkt. No. 89.)

### B.  Factual Background

M&A is a limited liability company organized under the laws of Georgia with its

headquarters and primary offices in Atlanta, Georgia. (Dkt. No. 67 at 2.) M&A is a subsidiary of

former defendant Repay LLC, which is an indirect subsidiary of former defendant Repay Holding

Corporation. (*Id.*) CDT Technologies, Ltd. ("CDT") is a Texas limited partnership and is another

subsidiary of former defendant Repay Holdings, LLC. (Dkt. 67 at 2.) CDT operates a facility in

this district, in The Colony. (*Id.* at 3.) In Plaintiff's Amended Complaint, Plaintiff points to CDT's

facility in The Colony ("The Colony facility") as M&A's regular and established place of business

for the purposes of venue. (Dkt. No. 36 at 2.)

## II.     LEGAL STANDARD

A party may move to dismiss an action for "improper venue." Fed. R. Civ. P. 12(b)(3).

"Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining

venue lies with the plaintiff." *ATEN Int'l Co., Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 120–

21 (E.D. Tex. 2009) (citation omitted). A plaintiff may carry its burden by presenting facts, taken

as true, that establish venue. *Id.* The Court "must accept as true all allegations in the complaint and

resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, No. 6:13-cv-00459, 2014 WL 978685, at \*1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237-38 (5th Cir. 2009)). The Federal Circuit has emphasized that "each case depends on its own facts" and "no one fact is controlling." *In re Cray Inc.*, 871 F.3d 1355, 1362, 1366 (Fed. Cir. 2017). If venue is improper, the Court must dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In an action for patent infringement, venue is controlled by 28 U.S.C. § 1400(b). Pursuant to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Under the residency requirement, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 262 (2017). If the plaintiff does not satisfy this residency requirement, it must present facts that, if taken as true, show that the defendant has a regular and established place of business in the judicial district. Under 28 U.S.C. § 1400, a "regular and established place of business" must be (1) "a physical place in the district"; (2) "regular and established"; and (3) "the place of the defendant." *In re Cray*, 871 F.3d at 1360. For a "regular and established place of business" to be a "place of the defendant," several considerations apply, such as "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place." *Id.* at 1363. "If any statutory requirement is not satisfied, venue is improper under § 1400(b)." *Id.* at 1360.

Venue may be imputed under an alter-ego or veil-piercing theory. *See Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111, 1125 (Fed. Cir. 2021). But "where related companies have

3

maintained corporate separateness, the place of business of one corporation is not imputed to the other for venue purposes." *Andra Grp. v. Victoria's Secret Stores, L.L.C.*, 6 F.4th 1283, 1289 (Fed. Cir. 2021). "Because the alter ego issue is not unique to patent law, . . . court[s] appl[y] the law of the regional circuit." *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004).

"The presumption of institutional independence of related corporate entities may be rebutted by 'clear evidence.'" *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004). A non-exhaustive list of factors courts may consider include:

> whether (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary have common directors or officers; (3) the parent and subsidiary have common business departments; (4) the parent and subsidiary file consolidated financial statements; (5) the parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and other expenses of subsidiary; (9) the subsidiary receives no business except that given by the parent; (10) the parent uses the subsidiary's property as its own; (11) the daily operations of the two corporations are not kept separate; (12) the subsidiary does not observe corporate formalities.

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 418 (5th Cir. 2006). "The alter ego doctrine, like all variations of piercing the corporate veil doctrine, is reserved for exceptional cases." *See Bridas*, 447 F.3d at 416. The Fifth Circuit has noted that piercing the veil through alter ego for a sibling corporation could arguably require a stronger showing than for a parent corporation. *See Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999).

## III. DISCUSSION

### A. Regular and Established Place of Business[1]

For the Motion to Dismiss, M&A's improper venue argument does not focus on whether

---

[1] The parties do not dispute that M&A is incorporated in Geogia and, therefore, resides in Georgia for the purposes of a Section 1400 inquiry. (Dkt. No. 67. at 2, 5; *see generally* Dkt. No. 72.)

M&A's alleged acts of infringement occurred in this district. (Dkt. No. 67 at 5.) The focus, rather, is on whether M&A has a "regular and established place of business" in the district. 28 U.S.C. § 1400(b). Even more specifically, the dispute turns on whether a CDT leased facility in this District in The Colony is a "place of" Defendant M&A Ventures, as that is the only "regular and established place of business" identified by Plaintiff.

M&A attests that CDT—a related but separate and distinct entity—leases and maintains The Colony facility, not M&A. (*Id.* (citing Dkt. No. 67-1 ¶ 12).)[2] M&A further attests that it (1) does not have any employees at The Colony facility, (2) does not conduct business out of The Colony facility, and (3) has no individuals working in The Colony facility performing work related to the accused product in this case. (*Id.* (citing Dkt. No. 67-1 ¶¶ 11, 15).) In response to Plaintiff's identification of signage at The Colony facility—specifically a "REPAY" sign on the building (Dkt. No. 36 at 2; Dkt. No. 72 at 9)—and job postings for The Colony facility, M&A argues that the signage does not identity M&A and the job postings are not M&A job postings. (*Id.* at 6.)

Plaintiff contends that M&A's argument that it does not have employees at The Colony facility is faulty because M&A does not have any employees. (Dkt. No. 72 at 6.) Instead, Plaintiff contends, Repay Management Services, LLC—another separate but related entity—directly employs all individuals who work on behalf of one or more of the various "Repay" operating entities, such as M&A. (*Id.*) Plaintiff further argues that Mr. Dempsey's statement that "M&A does not conduct any business with any customer through any physical office located in this District," does not foreclose the possibility that M&A conducts any non-customer facing business out of The Colony facility. (*Id.*) Finally, Plaintiff argues that the fact that CDT signed The Colony facility's lease is not determinative and that other inquiries are relevant, such as M&A placing its

---

[2] In support of its Motion to Dismiss, M&A submitted a declaration from its General Counsel, Mr. Dempsey. (Dkt. No. 67-1.)

trademark ("REPAY") on the facility, the same trademark appearing on the Repay LinkedIn page, and the common accounting group for the Repay entities pays the rent for The Colony facility. (*Id.* at 8-9.)

Plaintiff also argues that additional evidence affirmatively shows that The Colony facility is M&A's place of business. (*Id.* at 9.)[3] Specifically, Plaintiff argues that Repay entities currently have a job posting for a sales engineer at The Colony facility that will work on the M&A accused products. (*Id.* at 10.) Plaintiff also argues that Repay entities have recently posted other M&A-related jobs at The Colony facility. (*Id.*) Plaintiff further argues that in addition to the print and mail operators, there are at least three other employees at The Colony facility that work on a broader scope than just working for CDT. (*Id.*)

Having reviewed the evidence and considered the arguments, the Court finds that Plaintiff has failed to show that M&A has a regular and established place of business in this district. There is no evidence that M&A owns or leases a facility in this district. The only facility in this district that Plaintiff identifies as a potential place of business is CDT's The Colony facility. (Dkt. No. 36 at 2.) Plaintiff does not dispute that CDT signed the lease of The Colony facility. (Dkt. No. 72 at 8.) Further, there is no evidence that M&A "exercises other attributes of possession or control over" The Colony facility, such that the facility would be a "place of" M&A. *In re Cray*, 871 F.3d at 1363. M&A submitted a sworn declaration that it has no employees at The Colony facility, does not conduct business out of The Colony facility, and no individuals working in The Colony facility perform work related to the accused product in this case. (Dkt. No. 67 (citing Dkt. No. 67-1 ¶¶ 11, 15).) Plaintiff failed to provide any evidence to rebut this declaration. While Plaintiff makes a great

---

[3] Plaintiff argues that the testimony M&A relies on to support its contentions that the printing and mailing of M&A invoices and statements for its customer did not occur at The Colony facility is not reliable, but merely offers conjecture. (*See* Dkt. No. 72 at 9-10.)

deal about the "REPAY: REALTIME ELECTRONIC PAYMENTS" branding on the face of the building, Plaintiff fails to establish how this suffices to show that M&A holds out The Colony facility as its own place of business. *In re Cray*, 871 F.3d at 1363 ("Marketing or advertisements also may be relevant, but only to the extent they indicate that the defendant itself holds out a place for its business."); *see also Bd. of Regents v. Medtronic PLC*, 2018 WL 4179080, at *2 (W.D. Tex. July 19, 2018) (finding "that the use of the common or generic name Medtronic on the exterior of the building, as well as the press releases announcing the business to be conducted in the district" was insufficient to establish that venue was proper). Notably, the branding on the face of The Colony facility does not say "M&A Ventures" or anything similar; rather it says "REPAY." On its face, this branding does not indicate to passersby that The Colony facility is a "place of" M&A Ventures. *See Bd. of Regents*, 2018 WL 4179080, at *1-2. That M&A holds the trademark for "REPAY: REALTIME ELECTRONIC PAYMENTS," standing alone is insufficient to make every location bearing that trademark a "place of" M&A under *In re Cray*. Accordingly, the Court finds that Plaintiff has failed to carry its burden to show that M&A has a regular and established place of business in the Eastern District of Texas.

### B. Imputation

Next, Plaintiff argues that CDT is merely an alter ego of M&A, which it contends transforms CDT's The Colony facility into a regular and established place of business of M&A. (Dkt. No. 72 at 12-16.) Plaintiff must meet a substantial burden of showing a sufficient degree of control by M&A to impute CDT's The Colony facility to M&A. *See Adm'rs of Tulane Educ. Fund v. Ipsen, S.A.*, 450 Fed. App'x 326, 331 (5th Cir. 2011) ("Where a parent and subsidiary observe corporate formalities, the plaintiff has a heavy burden to establish a degree of control sufficient to impute the subsidiary's jurisdictional contacts to the parent."); *see also Dickson Marine*, 179 F.3d at 338. As discussed above, courts in the Fifth Circuit consider a non-exhaustive list of twelve

factors in analyzing whether an alter ego relationship exists. *Bridas*, 447 F.3d at 418. The parties dispute several of these factors.

### 1. Alter ego factors

Factor 1 – Common stock ownership. It is undisputed that both M&A and CDT are wholly owned by Repay Holdings Corp. (Dkt. No. 67 at 7; Dkt. No. 72 at 12.) Thus, this factor weighs in favor of finding that CDT is an alter ego of M&A.

Factor 2 – Common directors and officers. It is undisputed that M&A and CDT share common directors and officers. (Dkt. No. 67 at 7; Dkt. No. 72 at 13.) Thus, this factor weighs in favor of finding that CDT is an alter ego of M&A.

Factor 3 – Common business departments. It is undisputed that M&A and CDT share common business departments. (Dkt. No. 67 at 7; Dkt. No. 72 at 13.) Thus, this factor weighs in favor of finding that CDT is an alter ego of M&A.

Factor 4 – Consolidated financial statements. It is undisputed that M&A and CDT have consolidated financial statements. (Dkt. No. 67 at 7; Dkt. No. 72 at 13.) Thus, this factor weighs in favor of finding that CDT is an alter ego of M&A.

Factor 5 – Financing of one entity by the controlling entity. M&A declares that it does not finance CDT. (Dkt. No. 67 at 7 (citing Dkt. No. 67-1 ¶ 13).) Plaintiff argues that this fact favors a finding of alter ego because Mr. Dempsey, at his deposition, did not know how or if the Repay Defendants pay the M&A or CDT employees. (*Id.* at 13-14.) However, whether money from M&A flows to the Repay Defendants or how (or if) the Repay Defendants pay the M&A and CDT employees is irrelevant to the inquiry concerning whether CDT is an alter ego of M&A. The relevant entities for the alter ego analysis are M&A and CDT, not other entities in the Repay corporate family. Plaintiff cannot generally point to actions taken by other entities and *sub silentio*

assume they are also alter egos of each other. *Dickson Marine*, 179 F.3d at 338; *Freudensprung*, 379 F.3d at 346. The Court finds that this factor weighs against finding that CDT is an alter ego of M&A.

Factor 6 – Causation of incorporation of controlling entity by another company. It is undisputed that M&A did not cause the incorporation of CDT. (Dkt. No. 72 at 14.) Thus, this factor weighs against finding that CDT is an alter ego of M&A.

Factor 7 – Operation of the subsidiary entity with grossly inadequate capital. Plaintiff does not dispute M&A's declaration that CDT does not operate with grossly inadequate capital. (Dkt. No. 72 at 14.) Thus, this factor weighs against finding that CDT is an alter ego of M&A.

Factor 8 – The controlling entity pays the salaries and expenses of the other entity. M&A declares that M&A does not pay the expenses of CDT. (Dkt. No. 67 at 7 (citing Dkt. No. 67-1 ¶ 13).) Plaintiff argues that Mr. Dempsey testified that M&A's accounting group pays the expenses for all Repay entities, including the lease of The Colony facility. (Dkt. No. 72 at 14.) Plaintiff misrepresents Mr. Dempsey's testimony. Mr. Dempsey testified that he does not "know exactly how" M&A's accounting group pays expenses if it does not have enough money in its bank accounts. (*Id.* (citing Dkt. No. 64-7 at 117:5-11).) Mr. Dempsey did not testify that M&A's "'accounting group' pays the expenses for all Repay entities, including for the lease of The Colony office." (Dkt. No. 72 at 14.) The Court finds that this factor weighs against finding that CDT is an alter ego of M&A.

Factor 9 – Entity receives no business except that given by the controlling entity. M&A contends that the business CDT receives is not limited to that given by M&A. (Dkt. No. 67 at 8.) In its declaration, M&A states that CDT possesses its own customers and services those customers through The Colony facility and that M&A does not direct any of its business through CDT or The

9

Colony facility. (*Id.*) Plaintiff argues that M&A's and CDT's operations are intertwined and that M&A "plays a key role in attracting CDT's business." (Dkt. No. 72 at 15.) Plaintiff cites Mr. Dempsey's testimony that at least some CDT customers contract with CDT and M&A simultaneously. (*Id.* (citing Dkt. No. 64-7 at 147:6-25).) However, the fact that *some* CDT customers *may* enter contracts with both CDT and M&A does not support the proposition that CDT receives no business except that given by M&A. The Court finds that this factor weighs against finding that CDT is an alter ego of M&A.

Factor 10 – Controlling entity uses property of the other entity as its own. M&A declares that it does not use CDT's property as its own and does not use The Colony facility to conduct business. (Dkt. No. 67 at 8.) Plaintiff argues that M&A uses The Colony facility for operations related to Repay LIFT and for mailing invoices and statements to customers. (Dkt. No. 72 at 15.) However, as explained above, Plaintiff has failed to produce evidence to support its position that M&A uses The Colony facility. Instead, the evidence Plaintiff relies on shows that CDT uses the Repay LIFT product in The Colony facility and ███████████████████████████ ████████████ (Dkt. No. 72, 11, 15.) This evidence does not provide a sufficient nexus to establish that M&A uses CDT's The Colony facility as its own. Thus, this factor weighs against finding that CDT is an alter ego of M&A.

Factor 11 – Daily operations of the two corporations are not kept separate. M&A declares that the daily operations of M&A and CDT are kept separate. (Dkt. No. 67 at 8 (citing Dkt. No. 67-1 ¶ 13).) Plaintiff argues that M&A and CDT disregard their corporate separateness based on their handling of their employees, arguing that the Repay Defendants do not observe the formalities for its employees' payment and time entries. (Dkt. No. 72 at 15.) Plaintiff also argues that CDT does business under "REPAY," M&A's trademark, which supports its contention that the two

10

corporations do not keep their daily operations separate. For example, Plaintiff alleges that Repay Management Services, LLC's "employees work on behalf of other Repay operating entities (including M&A and CDT)," but that entity is ***not*** M&A, and Plaintiff has failed to show or argue that the Court should impute the actions of Repay Management Services, LLC to M&A. The Court does not find that this evidence rebuts M&A's declaration that the day-to-day operations of M&A and CDT are not distinct. The Court finds that this factor weighs against finding that CDT is an alter ego of M&A.

Factor 12 – The entities do not observe corporate formalities. M&A declares that M&A and CDT observe corporate formalities, stating that the two corporations are incorporated in separate states, maintain separate bank accounts, and enter agreements with each other in observance of corporate separateness. (Dkt. No. 67 at 8.) In response, Plaintiff fails to raise any evidence that M&A and CDT do not observe corporate formalities. (Dkt. No. 72 at 16.) The Court finds that this factor weighs against finding that CDT is an alter ego of M&A.

In sum, the Court finds that eight factors weigh against finding that an alter ego relationship exists between M&A and CDT and that four factors favor such a finding. The weight of the *Bridas* factors disfavors finding that CDT is an alter ego of M&A. Notably, Plaintiff's alter ego allegations lack a critical element in establishing such a relationship: control by one entity over the other. *See Bridas*, 447 F.3d at 416. While Plaintiff points to various other related entities in the Repay corporate family, it fails to make a credible showing that M&A ***itself*** exerts the requisite degree of control over CDT such that the Court should impute the place of business of CDT to M&A. For instance, Plaintiff alleges that Repay Management Services, LLC's "employees work on behalf of other Repay operating entities (including M&A and CDT)," but that entity is ***not*** M&A, and Plaintiff has failed to show that the Court should impute the actions of Repay Management

11

Services, LLC to M&A. (Dkt. No. 72 at 15.) There is no dispute that the various Repay entities are related and work in conjunction with one another, but that alone does not meet the high bar to ignore the corporate separateness of all entities. *See Dickson Marine*, 179 F.3d at 338.

Here, where "there are some factors in favor of imputing contacts and some factors against . . . the maintenance of corporate formalities tips in favor of finding that the entities are not alter egos." *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 588 (5th Cir. 2010). Such a result is further supported by the Fifth Circuit's caution that a finding of imputation between sibling corporations, as here, likely requires an "even stronger showing" than for a parent-subsidiary relationship. *Dickson Marine*, 179 F.3d at 338-39 (analyzing "whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary" under the *Hargrave* factors). In view of the foregoing, the Court finds that M&A and CDT are separate and distinct corporate entities, and the Court will not impute CDT's place of business in this district to M&A.

## C. Transfer

After finding that venue is improper in the Eastern District of Texas, the Court must either dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). There is no dispute that this case could have been brought in the Northern District of Georgia. M&A is incorporated in the state of Georgia, with its headquarters located in Atlanta, Georgia. (Dkt. No. 67 at 2.) Therefore, M&A, for the purposes of the patent venue statute, resides in the Northern District of Georgia. Accordingly, and in the interest of justice, the Court finds that this case should be transferred to the Northern District of Georgia.

## IV.    CONCLUSION

Defendant's Motion to Dismiss (Dkt. No. 67) is **GRANTED** for the reasons stated herein. Accordingly, it is **ORDERED** that this case is transferred to the United States District Court for

the Northern District of Georgia. The Clerk of the Court shall forthwith take such steps as are

needed to effectuate this transfer. The parties are directed to jointly prepare a redacted version of

this Memorandum Opinion and Order for public viewing and to file the same on the Court's docket

as an attachment to a Notice of Redaction within five (5) business days.

**So ORDERED and SIGNED this 4th day of September, 2024.**


_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE