# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORHTERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| AUTOSCRIBE CORPORATION | § | |
| | § | |
| Plaintiff | § | Case No. 1:24-cv-04282-SCJ |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| M&A VENTURES, LLC | § | |
| | § | |
| Defendant. | § | |
| | § | |

## PLAINTIFF AUTOSCRIBE CORPORATION'S
## LPR 6.5(a) OPENING CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................1

II.   LEGAL STANDARDS – CLAIM CONSTRUCTION FRAMEWORK ...3

III.  DISPUTED TERMS.................................................................4

  A.  "sensitive financial account information" ................................4

    1)  Repay's First Argument: Indefinite....................................7

    2)  Repay's Alternative Proposed Construction........................8

  B.  "obtain[ing] the [second] payment amount /// forward[ing] at least a portion of the [second] payment amount"........................................10

  C.  "authenticate[s] a payee"/ "authenticating the payee" ..........................12

  D.  "function" ...........................................................................14

  E.  "perform[ing] each software process required to maintain compliance with one or more information security standards" ................................17

  F.  "a representation of the nonsensitive electronic data token"..................21

  G.  "wherein the representation of the non-sensitive electronic data token is the non-sensitive electronic data token" ..........................................24

  H.  "providing a nonsensitive data token to the merchant… without providing the non-sensitive data token to the payer" ...............................24

  I.   "receiving the non-sensitive electronic data token from the secure server, wherein…the secure server does not provide the non- sensitive electronic data token to the payer" ..............................................25

    1)  Repay's proposal is inconsistent with how it treats other claim elements in the same claims. ..........................................25

    2)  Plain and ordinary meaning is sufficient for these claim terms, and Repay's proposal contradicts the plain and ordinary meaning. ...............26

    3)  Repay's proposal is inconsistent with the purpose of the invention. 27

  J.   "generating a uniform resource locator (url),… the url comprising either: a dynamic url generated by the secure server…; or a static url and a hypertext transport protocol (http) parameter…"..........................................30

CONCLUSION..........................................................................31

CERTIFICATE OF SERVICE & COMPLIANCE ...........................................33

**Table of Exhibits**

| Exhibit | Description |
|---------|-------------|
| Exhibit A | www.merriamwebster.com (including at "sensitive") |
| Exhibit B | PCI DSS 2010 ver. 2.0 |
| Exhibit G | www.merriamwebster.com (including at "execute") |
| Exhibit H | https://www.britannica.com/dictionary ("including at "sensitive") |
| Exhibit I | Excerpts from www.dictionary.com (including at "process") |
| Exhibit L | Prosecution History |

## I.  <u>INTRODUCTION</u>

At a high level, U.S. Patent No. 11,620,621 (the "'621 Patent") claims an invention for processing payments from a payer to a payee, where a third party—such as M&A Ventures, LLC ("Repay")—serves as a behind-the-scenes intermediary that enables the payee to accept credit card payments on its webpage without needing to bear the liability of receiving sensitive financial account information from the payer.[1] *See* Ex. A.

The '621 Patent needs little construction—its clear language can largely be interpreted by its "plain and ordinary" meaning. While the underlying technology is advanced, the claims are readily understandable and written in straightforward, ordinary English. Despite this, Repay proposes ten terms for construction, with a complicated set of constructions that are designed to improperly narrow the scope of the claims, where it boosts Repay's non-infringement case and, conversely improperly expand the scope where it benefits Repay's invalidity arguments. In short, Repay's proposals violate well-established claim construction principles and are not supported by the intrinsic evidence. Moreover, Repay's proposals actually defeat the purpose of claim construction by adding confusion and complexity where none is merited.

---

[1]  This generalized overview is provided for exemplary and explanatory purposes. It is not intended to be limiting.

1

**Procedural History**

Autoscribe filed this lawsuit in the Eastern District of Texas, and the Parties passed several major milestones before transfer: Autoscribe served its infringement contentions, Repay served its invalidity contentions, the Parties served their proposed terms for construction and preliminary constructions, and the Parties filed their Joint Claim Construction Statement (Dkt. 98).

Additionally, on July 18, 2024, Repay filed a petition[2] for *inter partes* review, where they proposed constructions of three claim terms in support of their challenge to the validity of the '621 Patent:

> "providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant… without providing the non-sensitive electronic data token to the payer"

> "receiving the non-sensitive electronic data token from the secure server, Wherein...the secure server does not provide the non-sensitive electronic data token to the payer"

> "generating a uniform resource locator (URL), ... the URL comprising either: a dynamic URL generated by the secure server...; or a static URL and a hypertext transport protocol (HTTP) parameter..."

*See M&A Ventures, LLC et al. v. Autoscribe Corporation*, IPR2024-01159, Paper 4 at 11–21 (PTAB July 18, 2024). Repay has requested constructions of these three

---

[2]  The PTAB has not yet made an institution decision regarding Repay's petition.

terms in the present litigation as well—Autoscribe discusses them in Sections III(I), III(J), and III(K), below.

## II.    LEGAL STANDARDS – CLAIM CONSTRUCTION FRAMEWORK

A foundational principle of claim construction is that "the words of a claim are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks and citation omitted). This general rule especially holds where the claim terms at issue are straightforward. *See Summit 6, LLC v. Samsung Elec. Co., Ltd.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (noting that the district court did not err in declining to construe a term when the term was straightforward).

There are "only two exceptions to [the] general rule" of plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)). To change the meaning of a claim term, ***the redefinition or disavowal must be "clear" and "unmistakable."*** *See GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) (To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term."); *see also*

*Home Diagnostics, Inc. v. Lifescan, Inc.*, 381 F.3d 1352, 1358 (Fed. Cir. 2004) ("Absent a clear disavowal or contrary definition in the specification or the prosecution history, the patentee is entitled to the full scope of its claim language."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A patent carries a presumption of validity that can only be rebutted by clear and convincing evidence. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004); *see also Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) ("Indefiniteness must be proven by clear and convincing evidence."). The definiteness standard imparted by the Supreme Court "recogniz[es] that absolute precision is unattainable." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014). Thus, "***the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter.***" *Id.* (citations omitted).

## III.   <u>DISPUTED TERMS</u>

### A. "sensitive financial account information"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Not indefinite; plain and Ordinary Meaning | Indefinite; alternatively, "financial account information whose storage requires compliance with one or more information security standards" |

The term "sensitive financial account information" has a definite, plain and ordinary meaning; instructing the jury to read it any differently would only invite confusion where there is none. *See CallWave Commc'ns, LLC v. AT&T Mobility, LLC*, No. CV 12-1701, 2014 WL 7205657, at *9 (D. Del. Dec. 17, 2014) (finding construction unnecessary where a claim term "uses ordinary English words, which may be given their plain and ordinary meaning"); *Summit 6, LLC*, 802 F.3d at 1291 (Fed. Cir. 2015) (noting that the district court did not err in declining to construe a term when the term was straightforward); *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("the claim construction inquiry, therefore, begins and ends in all cases with the actual words of the claim"). Indeed, the textbook definition of "sensitive" means "needing to be handled in a careful or secret way in order to protect someone or something." Ex. H Similarly, as an example, "sensitive" is commonly used in the government context to mean "concerned with highly classified government information". *See* Ex. A. Additionally, it is used in common parlance to mean "highly receptive or susceptible: such as [ ] easily hurt or damaged." *See* Ex. A. Hence, when "sensitive" is combined with "financial account information," the phrase ordinarily means financial account information that must be kept secret because if it is obtained it would easily cause damage to the consumer (i.e., credit card fraud, unauthorized

bank withdrawals, identity theft). Thus, the plain and common understanding of this phrase is financial account information that, if disclosed, could harm the consumer.

The intrinsic evidence of the '621 Patent confirms that plain and ordinary meaning is appropriate for this term. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record . . . Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language."); *see also Renishaw*, 158 F.3d at 1248. For example, the '621 Patent clearly describes "sensitive financial account information" as the type of "information [that] could be used to perpetrate a fraud in case of a security breach." '621 Patent at 8:12–14. *See also id.* at 1:59–62 (describing use of tokenization to bolster security for electronic payments). In fact, the entire invention of the '621 Patent is set against the backdrop that fraud in credit card and other transactions is a major problem, and that security breaches compromise credit card accounts on a regular basis. *Id.* at 1:24–29.

Taken as a whole, the '621 Patent and its described preferred embodiments use the term "sensitive financial account information" consistently with its plain and ordinary meaning throughout. Sensitive financial account information is the type of financial account information that could be used to perpetrate a fraud in case of a

security breach (*Id.* at 8:12–14), which is simply a more complicated way of saying that it is information that, if disclosed, could harm the consumer.

### 1) Repay's First Argument: Indefinite

To overcome the plain and ordinary claim language and establish that this claim term is indefinite, Repay must prove "by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Services, Inc. v. M-I LLC,* 514 F.3d 1244, 1249-*50 (Fed. Cir. 2008); *see Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017). In evaluating the evidence, the Supreme Court has recognized that "absolute precision is unattainable" and that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Nautilus*, 572 U.S. at 899. "A claim is indefinite only when a person of ordinary skill in the art is unable to understand the bounds of the claim when read in light of the specification." *Tivo, Inc. v. Verizon Communications, Inc.*, 2012 WL 2499387, at *12 (E.D. Tex. Mar. 12, 2012); *see Miles Labs, Inc. v. Shandon, Inc.*, 997 F.2d 8870, 875 (Fed. Cir. 1993). The plain and ordinary claim language and the intrinsic evidence allow a person of ordinary skill in the art  (or even an ordinary person) to understand that information like full credit card numbers, full bank

account numbers, and CVC codes are "sensitive financial account information." Repay cannot demonstrate "sensitive financial account information" is indefinite.

### 2) Repay's Alternative Proposed Construction[3]

Repay's alternative proposed construction is legally flawed. For example, the question of storage in "compliance with one or more information security standards" is addressed in other aspects of the full claim element:

> store the sensitive financial account information in a secure storage location and perform each software process required to maintain **compliance with one or more information security standards**

'621 Patent at Claim 1 (emphasis added). Adding the same language to an earlier part of the claim element not only risks confusing the jury by repeating it, but it adds redundancies and renders the remaining part of the claim language superfluous. *Cf. Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.") (quotation omitted).

Moreover, Repay's proposed construction ignores that the '621 Patent describes "sensitive financial account information" as "information [that] could be used to perpetrate a fraud in case of a security breach." *Id.* at 8:12–14. Because Repay's proposed construction would vary the meaning of the term from the plain

---

[3] The fact that Repay can come up with a proposed construction belies its claim that the term is, in fact, indefinite.

language definition attributed to the term within the specification, it is improper.[4] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1324 (Fed. Cir. 2005) (discussing how a "claim meaning that is unambiguous in light of the intrinsic evidence" should not be contradicted).

Repay's proposed claim construction is also inherently overbroad, in that it fails to take into account the '621 Patent's distinguishing of "sensitive financial account information" from non-sensitive information. *See, e.g.*, '621 Patent at 8:2-14. Repay's proposed construction, whether by mistake or design, fails to maintain the distinction between those two classes of information ("sensitive" and "non-sensitive") by pulling any type of financial information that is subject to *any* information security standard, within the meaning of "sensitive financial account information," regardless of whether it is the type of "information [that] could be used to perpetrate a fraud in case of a security breach." *Id.* at 8:12–14. This type of construction makes no sense in the context of the intrinsic record.

---

[4] To the extent Repay is relying on the expert testimony of Dr. Michael Shamos to support its proposed construction, such a reliance is improper because it varies from the plain and ordinary claim language. *See Vitronics*, 90 F.3d at 1584 ("extrinsic evidence in general, and expert testimony in particular . . . may not be used to vary or contradict the claim language . . Nor may it contradict the import of other parts of the specification").

Accordingly, Repay's proposed construction only creates further confusion that is inconsistent with the plain and ordinary claim language and, therefore, should be rejected.

**B.    "obtain[ing] the [second] payment amount /// forward[ing] at least a portion of the [second] payment amount"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "obtaining the payment amount and causing or requesting at least a portion of the payment amount to be sent, directed, or credited" | "obtain[ing] the money required for the [second] payment" /// "forward[ing] at least a portion of the money required for the [second] payment" |

While Repay seeks a construction designed to generate a new non-infringement position based on the accused instrumentalities, Autoscribe proposes a construction based on the claim language and the prosecution history. *Cf. Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006) (forbidding courts from from "tailoring a claim construction to fit the dimensions of the accused product or process and to reach a preconceived judgment of infringement or noninfringement").

The meaning of this claim term is clearer in the full context of the claim element in which it appears:

> processing the payment transaction using the sensitive financial account information by generating and transmitting an electronic request requesting ***the payment amount*** from the financial account, obtaining ***the payment amount***, and forwarding at least a portion of ***the payment amount*** to the payee.

10

'621 Patent at Claim 1. Repay's proposal renders the word "amount" void and out of the claim, which is "highly disfavored." *Phillips*, 415 F.3d at 1324.

Repay's proposal is also inconsistent with the prosecution of this term as demonstrated in the prosecution history. Specifically, Repay's proposal appears to require that the operator of the secure server (*e.g.*, Repay) actually obtain and distribute the actual dollars and cents of a payment. The prosecution history, however, demonstrates that's not a limitation contemplated by this term.

This claim term (and the surrounding language regarding the "electronic request") was added in an examiner amendment that issued alongside the February 22, 2023 Notice of Allowance. Ex. L at ASC000501. The examiner amendment was based on a revision proposed by Autoscribe's prosecution counsel that explicitly distinguished between (1) the secure server and (2) "the entity that causes the payment amount to be transferred":

> **Commented [JRK3]:** I called this request (from the secure server to the entity that causes the payment amount to be transferred) an "electronic request" to differentiate it from the "payment transaction instruction" (from the merchant server to the secure server) described in paragraph [0041] of the spec and recited in the merchant server claims.

Ex. L at ASC000527. That is, the prosecution history establishes (by way of the agreement between prosecution counsel and the examiner) that this language

includes circumstances where the secure server makes a request to a third party to cause the dollars and cents to change hands. *Id.* Autoscribe's proposed construction captures this intent, while Repay's proposal excludes it.

In short, Repay's proposed construction is a transparent attempt to ignore and omit claim language in order to generate non-infringement based on the accused instrumentalities. This should be rejected and Autoscribe's proposed construction should be adopted.

**C.** **"authenticate[s] a payee"/ "authenticating the payee"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and Ordinary Meaning | "verify[ies] the identity of the payee/verifying the identity of the payee" |

Both "authenticate[s] a payee" and "authenticating the payee" are "straightforward terms" that are each "used in common parlance"—"the plain and ordinary meaning of the disputed claim language is clear" and, accordingly, a construction of plain and ordinary meaning is appropriate. *Summit 6, LLC*, 802 F.3d at 1291. Repay proposes—much like Samsung did in *Summit 6*—that these "commonly used terms" should be given an additional limitation not found directly in the claim language, specification, or prosecution history. *Id.*

Indeed, Repay specifically seeks to limit this claim language to a particular *type* of authentication (identity verification) to the exclusion of other types, such as authenticating a user's authority to access the API. *See, e.g.*, '621 Patent at 10:46–

50 (referring, specifically, to an "authorized user"). Close examination of the intrinsic evidence demonstrates that certain embodiments disclosed in the '621 patent include more than identity verification in the authentication process. For example, the authentication step **578** (FIG. 4f) includes a comparison of identity to the "organization, application, and user key registry" to do more than verify the identity of the user, but also to determine whether that particular user has authority to access the system. '621 Patent at 13:55–14:12. Because Repay's proposal "reads out [this] preferred embodiment[ ]," it is incorrect.[5] *Epos Techs. Ltd. v. Pegasus Techs. Ltd.*, 766 F.3d 1338, 1347 (Fed. Cir. 2014).

In advancing its invalidity arguments in the IPR, Repay's position was consistent with the plain meaning Autoscribe advances here. For example, Repay argues that "PayPal 'authenticates the payee' using various levels of security to prevent ***unauthorized*** access," and argues that to "use the PayPal API, [the merchant] must have API credentials that identify [it] as a PayPal Business account holder ***who is authorized*** to perform various API operations." *See M&A Ventures v. Autoscribe*, IPR2024-01159, Paper 4 at 40 (emphasis added).

---

[5]  The extrinsic evidence advanced by Repay further supports the plain and ordinary meaning because it is consistent with the '621 Patent's preferred embodiments. For example, the Wiley Electrical and Electronics Engineering Dictionaryh defines "authentication" as "the process of verifying the ***legitimacy*** of a […] user." *See* Dkt. No. 98-1 at 3.

In short, Repay offers nothing to support disclaiming the claim scope described in the '621 Patent's intrinsic record or to depart from the plain and ordinary meaning of these commonly used terms. Its proposed construction should be rejected.

## D.    "function"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and Ordinary Meaning | "block of code that operates as a single logical unit" |

The term "function" does not need construction, because its meaning is clear as-is: the "function[s]" at issue are defined in the claims themselves. Specifically, the claim language describes two "function[s]": a "financial account registration function" and a "token retrieval function." The full claim language then goes on to describe what the functions are and the steps that they perform.

What the '621 Patent does ***not*** do is provide any basis to limit the scope of the term "function" to only those functionalities that are implemented in source code as a "block of code that operates as a single logical unit." The '621 Patent contains no disclosures of programming paradigms, code samples, *etc.* that would lead a POSITA to believe that "function" should be construed as Repay has proposed. In fact, the intrinsic evidence demonstrates the opposite—that the term "function" is used in its plain and ordinary sense to describe an action or related set of actions or routines (the specifics of which are set forth in the rest of the claim elements).

14

The claimed "function[s]" were added in the final amendment before the USPTO examiner issued the Notice of Allowance. *See* Ex. L at ASC000500 ("Proposed Claim Amendments"). The word "function" is used repeatedly in the prosecution history leading up to this amendment, and it is used in the plain and ordinary sense of the word:

> "Prior to the claimed invention, merchants were required to integrate their systems with the computer components required for compliance described above while ensuring that those components did not negatively impact the ***functions*** performed by the merchant system, including the user experience provided to their customers."

> "2.2.1 Implement only one primary ***function*** per server to prevent ***functions*** that require different security levels from co-existing on the same server. (For example, web servers, database servers, and DNS should be implemented on separate servers.)"

> "10.6 […] Log reviews must include those servers that perform security ***functions*** like intrusion-detection system (IDS) and authentication, authorization, and accounting protocol (AAA) servers (for example, RADIUS)."

Ex. L at ASC000306, ASC000338, ASC000371 (quoting Ex. B[6] at 25, 58) (using the term "function" in the normal sense, rather than with the code-specific

---

[6] Shortly before this amendment, prosecution counsel and the USPTO examiner considered a reference titled "Payment Card Industry (PCI) Data Security Standard" (the "PCI DSS Requirements"). *See* Ex. L at ASC000304–10 (discussing the PCI DSS Requirements), ASC000313–88 (attaching a copy of the PCI DSS Requirements). For legibility purposes, a separate copy of the PCI DSS Requirements has been included as Exhibit B. Because the entire document was included in the prosecution history, it should be considered as intrinsic evidence.

particularity that Repay proposes). This discussion of functions led directly to the introduction of the "function" term to the claims and the Notice of Allowance. *See* Ex. L at ASC000492 ("Applicant-Initiated interview Summary"), ASC000500 ("Proposed Claim Amendments" of the USPTO examiner), ASC000458 ("Notice of Allowance").

As another example, the '621 Patent describes that "[a] hosted system on a secure server **202** provides Financial Account Registration functions and Token Retrieval functions that can be accessed by merchants and others operating websites …." '621 Paent at 5:57–61. To use Repay's proposed construction would be to suggested that the invention describes hosting single blocks of code to be accessed by merchants and others. This makes no sense in the broader context of the entire specification.

Finally, as with many of its other proposals, Repay's invalidity positions taken in its IPR and Invalidity Contentions undermine its claim construction position. In the IPR, Repay points to multiple ***separate*** blocks of code (not a single logical unit) in a PayPal reference as the purported disclosure of the claimed financial account registration and token retrieval functions:  "PayPal includes SetExpressCheckout and _ExpressCheckout functions ('financial account registration' function) and the GetExpressCheckoutDetails and DoExpressCheckoutPayment functions ('token retrieval function[]')." *M&A Ventures v. Autoscribe*, IPR2024-01159, Paper 4 at 36.

In short, Repay's proposed construction ignores the intrinsic evidence, creates new limitations out of thin air, and takes commonly understood claim language and makes it more complicated, defeating the purpose of claim construction. *Digital Reg of Texas., LLC v. Adobe Sys, Inc.*, No. 12-cv-1971, 2014 WL 4090550, at *13 (N.D. Cal. Aug. 19, 2014) ("[O]ne object of claim construction is to simplify the definitions of these terms for the jury.").

## E.    "perform[ing] each software process required to maintain compliance with one or more information security standards"

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Not indefinite | Indefinite |

Repay's position that this term is indefinite cannot be reconciled with its proposed construction for "sensitive financial account information," in which Repay proposes inserting the exact language it contends is now indefinite.[7] This alone suggests that Repay cannot meet its high burden to demonstrate the term is indefinite. *Sonix Tech.*, 844 F.3d at 1377 ("Indefiniteness must be proven by clear and convincing evidence.").

"A claim is indefinite only if the claim is 'insolubly ambiguous' or 'not amenable to construction'" and "only if reasonable efforts at claim construction

---

[7] Repay's proposed alternative construction is "financial account information whose storage ***requires compliance with one or more information security standards***." Emphasis added.

prove futile." *Tivo*, 2012 WL 2499387, at *13 (citing *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375-76 (Fed. Cir. 2001) and *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005)). There is no insoluble ambiguity here; the term plainly means that the second server (the secure server) utilizes security measures that are more stringent than the merchant server and that comply with at least one security standard in the industry (but may also comply with more than one security standard in the industry).

"In assessing definiteness, claims are to be read in light of the patent's specification and prosecution history." *Nautilus*, 572 U.S. at 908. The '621 Patent specification discloses:

- "In the payments industry, tokenization has become a popular means of bolstering the security of electronic transactions while minimizing the complexity of compliance with industry standards and best practices," '621 Patent at 1:59-62;

- "In the PCI context, tokens are used to reference cardholder data that is stored in a separate database, application or off-site secure facility that is PCI compliant to the appropriate level. Therefore, the token, which is non-sensitive data, can be stored and used in a wide range of systems in the organization, without brining those systems within the scope of a higher-level PCI audit and more stringent compliance requirements," *Id.* at 1:63-2:3;

- "Using the methods disclosed herein, in preferred embodiments merchants are able to process such transactions without transmitting, processing or storing Financial Account data. This reduces the potential liability of the merchants for data loss, and avoids placing their customer tracking and payment processing systems (such as merchant server 204) within the scope of the present Payment Card Industry Data Security Standard (PCI-DSS), thus reducing compliance costs,

development costs, and accelerating time-to-market.," *Id.* at 5:62-6:4;

- "Merchant server 204 may store customer identification information, purchase history, and other data that does not include financial account information such as credit card information, without being subject to PCI compliance requirements, *Id.* at 7:8-12;

- "The second computing system, in this example secure server 202, may typically be set up to provide a higher level of security than the merchant server in order to protect the sensitive financial account information that will be stored there, as such information could be used to perpetrate a fraud in case of a security breach," *Id.* at 8:8-14;

- "The secure server 202 or 'hosted system' preferably meets acknowledged security standards, such as PCI compliance, to safeguard the financial account information secured there. The secure server 202 processes transactions using this secured information upon receipt of instructions and a token or other customer identifier from the merchant system that identifies the account to be charged." *Id.* at 10:51-57.

In addition, the PCI DSS Requirements are part of the prosecution history. Ex. L at ASC000304–10 (discussing the PCI DSS Requirements), ASC000313–88 (attaching a copy of the PCI DSS Requirements). This is more than adequate to provide a standard to measure the scope of the claim. *See, e.g., Hearing Components, Inc. v. Shure Inc.*, Nos. 2009-1364 & 2009-1365, 2010 WL 1236321, at *8 (Fed. Cir. April 1, 2010) (reversing district court's finding of indefiniteness because patent's specification that included examples clearly supplied some standard for measuring the scope of the disputed phrase).[8]

---

[8] Although a pre-*Nautilus* decision, this aspect of the Federal Circuit's holding is consistent with the approach set forth by the Supreme Court in *Nautilus*.

To surrounding terms of the claim language ("perform," "software," "required," "maintain," and "compliance") are all well-understood terms commonly used in the art. Meriam Webster's demonstrates that each of these has a plain meaning that can be readily applied to the claim language:

- "**perform**": "to carry out an action or pattern of behavior." Ex. A at 17.

- "**software**": "the entire set of programs, procedures, and related documentation associated with a mechanical or electronic system and especially a computer system." *Id.* at 41.

- "**required**": "stipulated as necessary to be done, made, or provided." *Id.* at 47.

- "**maintain**": "uphold or defend" *Id.* at 53.

- "**compliance**": "conformity in fulfilling official requirements." *Id.* at 60.

*See Board of Regents of University of Texas System v. A123 Systems, Inc.*, 2011 WL 11351115, at *3 (N.D. Tex. Mar. 29, 2011) (dictionaries are useful during claim construction); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (same).These dictionary definitions, read together, mean "carrying out an action" for each "set of programs, procedures, and related documentation associated with an electronic system and especially a computer system" that is "necessary to be done" to "uphold" "conformity in fulfilling official requirements" with "one or more information security standards." In other words, both the intrinsic and extrinsic

evidence demonstrates that Repay cannot meet their burden to prove indefiniteness by clear and convincing evidence.

"[D]efiniteness is to be evaluated from the perspective of someone skilled in the relevant art." *Nautilus*, 572 U.S. at 908. Here, a person skilled in the relevant art, taking into account both the complete intrinsic record of the '621 Patent and the intrinsic evidence, would be adequately informed as to the scope of the claim. Thus, this term is not indefinite.

**F.    "a representation of the nonsensitive electronic data token"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Not indefinite | Indefinite |

The term "a representation of the non-sensitive electronic data token" is not indefinite. As explained above, Repay bears the burden of proving, by clear and convincing evidence, that this term is indefinite. *Sonix Tech.*, 844 F.3d at 1377. The concept of tokenization is discussed at length in the specification of the '621 Patent. *Nautilus*, 572 U.S. at 908 ("In assessing definiteness, claims are to be read in light of the patent's specification and prosecution history."). For example, the '621 Patent describes that "[t]okenization is the process of replacing some piece of sensitive data with a value that is not considered sensitive outside the environment where it is stored and used. The token is a symbolic representation of a financial instrument or

instruction ….'" '621 Patent at 1:52–56. This provides more than enough information for a person of skill in the art to understand the term. *Nautilus*, 572 U.S. at 908.

The intrinsic record does not end there; rather the '621 Patent provides significant disclosure regarding the token and use of the term "representation" throughout the specification:

- "The token is an index to the stored financial account information for that customer that is stored by the merchant (or a server or service controlled by the merchant or merchant's agent) in connection with the customer record and is used to identify the customer account to be debited to process a payment authorized by the customer," *Id.* at 2:64-3:3;

- "The operator of the secure server then processes the payment using the financial account pointed to by the token and makes the proceeds available to the merchant. By retaining the token corresponding to the customer account to be debited, the merchant retains control of the customer's enrollment information and the ability to process payments whenever authorized (using financial account information provided by the customer) but does not hold the underlying financial account information or have security responsibility for that information," *Id.* at 3:6–15;

- "Secure server 202 returns a token or other account identifier constituting a symbolic representations of the financial account information to merchant server 204 after the financial account information has been registered to secure server 202. Thereafter, merchant server 204 may use the token to process further payment transactions authorized by the end user or customer at sites 206, 208, 210 in their interaction with the merchant," *Id.* at 7:1–8;

- "Secure server 202, in a preferred embodiment, stores the financial account information received from the customer (for example from sites 206, 208, or 210) and provides a token to merchant server 204." *Id.* at 7:31–34;

- "The token is an index to the stored financial account information from that customer, and is stored by the merchant in connection with the customer, then used by the merchant to identify the customer account to be debited to process a payment authorized by the customer," *Id.* at 7: 44–49;

- "The token is a pointer that allows the payee to reference the financial account information of that payer without possessing the actual financial account information," *Id.* at 8:40–43;

- "In an example embodiment, to process a payment from the customer, merchant server 204 submits the token corresponding to the customer account to be debited and information specifying the amount of the payment to the secure server 202. The operator of the secure server 202 then processes the payment using the financial account pointed to by the token, and makes the proceeds available to the merchant," *Id.* at 9:12–19;

- "In an embodiment, the token provided to the merchant is a symbolic representation of a financial instrument or account that is only meaningful to the merchant," *Id.* at 10:46–48.

The extrinsic evidence supports the definiteness of the intrinsic record. *See, e.g.*, Ex. I at 6 (defining "representation" as "the expression or designation by some term, character, or the like"); Ex. A at 40 (synonyms of "representation" are "depiction, illustration, delineation"). *See Maxell Ltd. v. Apple, Inc.*, 2020 WL 10456875, at *16 (E.D. Tex. Mar. 18, 2020) (looking at synonyms as extrinsic evidence of meaning).

When all intrinsic and extrinsic evidence is taken into account, it is clear that Repay has failed to meet its high burden to show this claim term is indefinite.

**G.** **"wherein the representation of the non-sensitive electronic data token is the non-sensitive electronic data token"**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Not indefinite | Indefinite |

Autoscribe incorporates the argument above, with respect to "a representation of the non-sensitive electronic data token" as if fully set forth herein.

Furthermore, this language in the '621 Patent is providing that the representation of the non-sensitive data token is not simply a illustration, symbol or portrayal but that it in fact does correspond directly to the actual data token that is retrieved or transmitted and is directly linked to the sensitive financial account information. In other words, this claim requires that the representation be tied to the actual data token where other claims in the '621 Patent are not as stringent and allow for other representations of the data token to be involved in the retrieval and transmittal process. Hence, it requires the representation of the data token be the best representation—the data token itself.

**H.** **"providing a nonsensitive data token to the merchant… without providing the non-sensitive data token to the payer"**

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Plain and Ordinary Meaning | "**during the token retrieval function**, provide a non-sensitive data token to the merchant **…** without providing the non-sensitive data token to the payer" (emphasis and ellipses added) |

## I.    "receiving the non-sensitive electronic data token from the secure server, wherein…the secure server does not provide the non- sensitive electronic data token to the payer"[9]

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and Ordinary Meaning | "**during the token retrieval function**, receiving a non-sensitive data token without the secure server providing the non-sensitive data token to the payer" (emphasis added) |

Repay's proposal is flawed for a number of reasons.

### 1)    Repay's proposal is inconsistent with how it treats other claim elements in the same claims.

First, it adds a temporal limitation to one element of the claim, while omitting that temporal limitation from other related claim elements and also from similarly situated claim elements. This demonstrates that the proposed construction is not because there is a legitimate dispute that justifies departing from the principle that "words of a claim are generally given their ordinary and customer meaning," *Phillips*, 415 F.3d at 1312, but because Repay is inappropriately trying to build in non-infringement and invalidity arguments based on the accused instrumentalities that are not supported in the claim language. This is forbidden. *Wilson Sporting Goods Co.*, 442 F.3d at 1331.

---

[9] Because these terms are nearly identical claim language from different perspectives (one from the secure server side (Claims 1, 8, and 23), one from the merchant server side (Claims 15 and 23)), the claim construction arguments overlap and Autoscribe addresses them simultaneously.

For example, Repay does not argue that each of the steps under the "financial account registration function" must be construed to include "during the financial account registration function." *See* Dkt. 98. Repay also does not even argue that other steps under the "token retrieval function" be construed to include its proposed "during the token retrieval function." *Id.* Adopting Repay's proposal now would create inconsistencies within the claim for no reason. *Cf. In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) (explaining how the similar principle that "the same phrase in different claims of the same patent should have the same meaning is a strong one").

### 2) Plain and ordinary meaning is sufficient for these claim terms, and Repay's proposal contradicts the plain and ordinary meaning.

The claim language, as is, does not require the addition of the temporal limitation "during the token retrieval function" because its plain meaning is already evident. At a high level, the claim is structured as follows:

> executing a token retrieval function…by:
>
> > providing a non-sensitive electronic data token…without providing the sensitive financial account information to the merchant server and without providing the non-sensitive electronic data token to the payer; and
> >
> > processing the payment transaction ….

'621 Patent at Claim 1.[10] In other words, the claim requires that the token retrieval function be executed ("carried out fully," or "put completely into effect," *see* Ex. G) by carrying out certain affirmative steps while also adhering to two negative limitations. In other words, for a system to infringe, all the steps of the token retrieval function must be completed (executed) and none of the prohibited steps can be taken.

Repay's proposal eviscerates that structure by placing a temporal limitation that would allow for the prohibited steps to occur, as long as they occurred at some point before or after the affirmative steps required as part of the token retrieval function. In other words, under Repay's proposal as long as the circle for the "token retrieval function" is drawn only around the affirmative steps, it does not matter if the system performs the prohibited steps. This is not what the plain and ordinary language of the claim says, and it has no support in the specification.

### 3) Repay's proposal is inconsistent with the purpose of the invention.

Supporting the plain and ordinary meaning approach discussed above is the fact that one of the key purposes of '621 Patent is to allow merchants to process payments without bearing the security requirements and potential liability that come with gathering customers' sensitive financial account information. *Cf. Grace Instr. Indus. LLC v. Chandler Instr. Co., LLC*, 57 F.4th 1001, 1008 (Fed. Cir. 2023)

---

[10] The remaining claim language is omitted only for purposes of showing how the claim is laid out.

("Claim construction requires determining how a skilled artisan would understand a claim term in the context of the entire patent, including the specification.") (quotation omitted). A claim construction argument, absent any clear, unmistakable, and unequivocal disavowal of claim scope, that would gut this benefit must be rejected. *See Thorner v. Sony Comp. Enter. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope.") But Repay's proposed construction does just that— and this problem becomes obvious if one focuses on the first negative limitation that Repay hides with its ellipses:

> "providing a non-sensitive electronic data token representing the sensitive financial account information to the merchant server ***without providing the sensitive financial account information to the merchant server*** and without providing the non-sensitive electronic data token to the payer; and"

'621 Patent at Claim 1 (emphasis added).

If the Court were to add Repay's temporal "during the token retrieval function" limitation to this claim element, then this addition would not just apply to the "without providing the non-sensitive electronic data token to the payer" limitation—it would also apply to the similarly situated "without providing the sensitive financial account information to the merchant server" limitation, This would mean that the prohibition on sending the "sensitive financial account

information" would only apply "during the token retrieval function." Outside of the token retrieval function, under Repay's proposal the sensitive financial account information could be shared freely.

In other words, Repay's proposed addition changes the entire operation of the claim. Instead of completing all of the required steps while taking none of the prohibited steps, which is consistent with the invention of the '621 Patent, Repay's proposal changes the invention to mean as long as the required steps themselves are taken before the prohibited ones, then it is fine—that *fundamentally* (and wrongly) changes the entire invention and directly contradicts what is taught by the specification. *See, e.g.*, '621 Patent at Abstract; 1:39–48; 1:66–2:3; 3:9–15; 5:62–6:4; 7:5–12; 8:37–43; 9:5–11; and 10:30–35.

Such a construction would clearly be absurd, as it would undermine a key purpose of the '621 Patent—to *never* provide the sensitive financial account information to the merchant. *See AIA Eng'g Ltd. v. Maggoteaux Int'l S/A*, 657 F.3d 1264, 1276 (Fed. Cir. 2011) ("We strive, where possible, to avoid nonsensical results in constructing claim language.") For that same reason, a POSITA would not construe the claim language in the manner that Repay proposes.

**J.    "generating a uniform resource locator (url),… the url comprising either: a dynamic url generated by the secure server…; or a static url and a hypertext transport protocol (http) parameter…"**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and Ordinary Meaning | "**providing** a URL that **is** either: (1) a dynamic URL generated by secure server or (2) a static URL **known to the merchant** and a parameter" (emphasis added) |

Repay's proposed construction consists of two changes: (1) the alteration of commonly understood terms that do not need to be construed; and (2) an out-of-the-blue additional limitation that the static URL be "known to the merchant," which is found nowhere in the specification or prosecution history of the '621 Patent. Repay's proposal should be rejected.

As an initial matter, "generating" is a commonly understood term for which no construction is required. *Summit 6, LLC*, 802 F.3d at 1291. Repay's proposal to simply replace "generating" with "providing" is unnecessary.

Moreover, the "known to the merchant" limitation is an extraneous addition and improper. The concept that a static URL must be known to a merchant is nowhere to be found in the '621 Patent's claims and specification. Given the specification is the "single best guide to the meaning of a disputed term," there is no basis to import Repay's atextual "known to the merchant" limitation into the claim's construction. *Phillips*, 415 F.3d at 1321 (quoting *Vitronics*, 90 F.3d at 1582).

The Court should therefore afford the term its plain and ordinary meaning instead of accepting Repay's rewrite of the claim language.

## <u>CONCLUSION</u>

For the reasons set out herein, Autoscribe asks the Court to adopt its proposed claim constructions as set out above and in the Joint Claim Construction and Prehearing Statement (Dkt. 98).

Dated: December 12, 2024

Respectfully submitted,

*/s/ Jason McManis*
Jason McManis
State Bar No.: 24088032
Colin Phillips
State Bar No.: 24105937
Chun Deng
State Bar No.: 24133178
Michael Killingsworth
State Bar No.: 24110089
Angela Peterson
State Bar No.:  24137111
Sean Healey
State Bar No.: 24142997
Ahmad, Zavitsanos & Mensing, PLLC
1221 McKinney Street, Suite 2500
Houston, Texas 77010
(713) 655-1101
jmcmanis@azalaw.com
cphillips@azalaw.com
cdeng@azalaw.com
mkillingsworth@azalaw.com
apeterson@azalaw.com
shealey@azalaw.com

David S. Moreland
State Bar No.: 521998
Meunier Carlin & Curfman LLC
999 Peachtree St. NE, Ste. 1300
Atlanta, GA 30309
(404) 645-7700
(404) 645-7707 (fax)
dmoreland@mcciplaw.com

***Attorneys for Autoscribe Corporation***

## <u>CERTIFICATE OF SERVICE & COMPLIANCE</u>

The undersigned hereby certifies that on December 12, 2024, a copy of the foregoing and attachments thereto were served via the Court's ECF system on all counsel of record in this matter.

Pursuant to Local Rule 7.1(D), counsel for Plaintiff Autoscribe Corporation certifies that the foregoing was prepared in 14-point Times New Roman font and otherwise conforms to the requirements of Local Rule 5.1.

<u>*/s/ Jason McManis*</u>
Jason McManis