## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AUTOSCRIBE CORPORATION

    Plaintiff

v.

M&A VENTURES, LLC

    Defendant.

§
§
§
§
§
§
§
§
§

Case No. 1:24-cv-04282-SCJ

JURY TRIAL DEMANDED

## M&A VENTURES LLC'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO CLAIM CONSTRUCTION ORDER

# TABLE OF CONTENTS

I.    Introduction.................................................................................1

II.    Background................................................................................2

III.    Argument .................................................................................5

   **A.**    Construction of "payment amount" in the "obtaining" and "forwarding" clauses is necessary......................................................6

   **B.**    Autoscribe's Objections misunderstand both M&A's proposed construction and the Special Master's Report. ..................................9

   **C.**    Because it is clear from the intrinsic evidence that "payment amount" has different meanings throughout the claim, antecedent basis does not control. ...................................................................................13

   **D.**    Autoscribe misapplies the rule preventing importation of limitations from the specification and attempts to read out limitations included in the claim…… ...........................................................................17

IV.    Conclusion.................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                       **Page(s)**

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006) ...........................................................................17

*Eon Corp. IP Holdings v. Silver Spring Networks*,
    815 F.3d 1314 (Fed. Cir. 2016) .............................................................................7

*Every Penny Counts, Inc. v. Am. Express Co.*,
    563 F.3d 1378 (Fed. Cir. 2009) .............................................................................8

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*,
    265 F.3d 1311 (Fed. Cir. 2001) ...........................................................................16

*Kara Technology Inc. v. Stamps.com Inc.*,
    582 F.3d 1341 (Fed. Cir. 2009) ...........................................................................18

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.*,
    520 F.3d 1367 (Fed. Cir. 2008) ...................................................................14, 16

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008) ....................................................................7, 8, 9

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) .........................................................17

*Phonometrics, Inc. v. N. Telecom Inc.*,
    133 F.3d 1459 (Fed. Cir. 1998) ...........................................................................14

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001) ...........................................................................14

*TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*,
    629 F. App'x. 916 (Fed. Cir. 2015) .......................................................................8

**Statutes**

35 U.S.C. § 101 .............................................................................................................9

## I.    INTRODUCTION

The parties and the Special Master have expended considerable time and resources on the construction of several claim terms contained in the Asserted Patent, U.S. Patent No. 11,620,621 ("the '621 Patent"). After over a hundred pages of briefing and hours of oral argument, the Special Master rendered his Report (Dkt. 154), to which M&A does not object. Autoscribe objects to only one finding—the construction of "payment amount."

Each of the independent claims of the '621 Patent—which purportedly describes methods and systems for securely processing electronic payments—recites processing a payment by "obtaining the *payment amount* and forwarding at least a portion of the *payment amount*" to the payee. *See* '621 Patent at Claim 1. Because the '621 Patent inconsistently uses the phrase "payment amount," M&A proposed a construction that clarifies "payment amount" means *money* in the "obtaining and forwarding" limitation. The Special Master agreed with M&A, rejecting Autoscribe's argument that "payment amount" meant information about the value of a given transaction.

The "obtaining and forwarding" term is the only claim term for which Autoscribe proposed its own construction. In objecting to the Special Master's Report, Autoscribe has withdrawn from this initial claim construction position under the guise of "plain and ordinary meaning." It is now Autoscribe's position that the

claim term need not be construed beyond its plain and ordinary meaning— so long as the plain and ordinary meaning of "payment amount" is understood to be information, not money. There is no evidence that the plain and ordinary meaning of the term is information. Accordingly, Autoscribe's objections to the Special Master's Report should be rejected, and the recommended construction of the "obtaining and forwarding" limitation—including that "payment amount" means money—should be adopted.

## II.    BACKGROUND

The purpose of the '621 Patent is to provide systems and methods for securely processing credit card transactions by using tokens to replace credit card data with a "symbolic representation" of the credit card data. '621 Patent, 1:52-59. Tokenization reduces potential theft of the credit card data and therefore a merchant's costs for securing such data. '621 Patent, 1:49-52. Naturally, as processing the transaction is the entire purpose behind the invention, each independent claim of the '621 Patent includes a "processing the payment" limitation which recites:

> [P]rocessing the payment transaction using the sensitive financial information by generating and transmitting an electronic request requesting the payment amount from the financial account, ***obtaining the payment amount***, and ***forwarding at least a portion of the payment amount to the payee***.

*See* '621 Patent, Claim 1 (emphasis added).

The following figure from M&A's Markman Hearing materials demonstrates

2

how the obtaining and forwarding limitations would function in practice.



Ex. A, M&A Markman Hearing Presentation Materials at 24.

In its Infringement Contentions, Autoscribe seemed to agree that processing a payment required actually paying the merchant. Autoscribe described its evidence as "[s]howing that Defendant's documentation describes the Payment API as a service allowing users to **make payments**." Dkt. 139-15, Infringement Contentions, at 1.

In their initial claim construction disclosures, both parties proposed constructions for the obtaining clause and the forwarding clause of the "processing a payment" limitation. Dkt. 98-1. The parties' proposed constructions are included below:

| Claim Term (1, 2, 8, 9, 15, 23, and 25) | Autoscribe's Proposal | M&A's Proposal |
|---|---|---|
| "obtain[ing] the [second] | "obtaining the payment | "obtain[ing] the |

| | | |
|---|---|---|
| payment amount forward[ing] at least a portion of the [second] payment amount" | amount and causing or requesting at least a portion of the payment amount to be sent, directed, or credited" | money required for the [second] payment" "forward[ing] at least a portion of the money required for the [second] payment" |

Autoscribe did not specifically construe the "payment amount" phrase. But its own construction required the payment amount to be "sent, directed, or ***credited***," revealing that Autoscribe, too, understood "payment amount" to mean money. Autoscribe also conceded in certain portions of its own briefing that "processing the payment" required obtaining and forwarding ***money***. Dkt. 141, p. 7 ("The prosecution history makes it clear that "obtain[ing]" and "forward[ing]" a payment amount includes money being transferred from a financial institution to the merchant.").

After briefing but before the *Markman* Hearing, Autoscribe proposed a revised construction for this claim term, which is included below. Again, the construction did not specifically provide a meaning for "payment amount."

| Claim Term (1, 2, 8, 9, 15, 23, and 25) | Autoscribe's Proposal | M&A's Proposal |
|---|---|---|
| "obtain[ing] the [second] payment amount forward[ing] at least a portion of the [second] payment amount" | "obtaining the payment amount and causing ~~or requesting~~ at least a portion of the payment amount to be ~~sent, directed, or credited~~ transferred" | "obtain[ing] the money required for the [second] payment" "forward[ing] at least a portion of the money required for the [second] payment" |

At the *Markman* Hearing, Autoscribe explained that under its proposed

construction, only information—not money—would change hands. M&A argued, and the Special Master agreed, that this construction would circumvent the entire purpose of the invention. Autoscribe's proposal also fails to explain how the secure server can "forward at least a portion" of information about the value of a transaction, as the claims would require under its proposal. The Special Master agreed that "[n]othing in the specification or prosecution history explains how the transaction value information could be apportioned." Dkt. 154, p. 16. At the *Markman* Hearing, counsel for Autoscribe acknowledged that the "at least a portion" claim language reflects the fact that the secure server can keep a portion of the payment as its *fee*. Ex. B, Claim Construction Tr., 70:9-71:14.

## III.   ARGUMENT

As explained above, the intrinsic evidence—including the purpose of the invention as explained by the patent's own specification and the claim language itself, which requires forwarding a portion of the payment amount—makes clear that "payment amount" as used in the obtaining and forwarding limitations means money.

Autoscribe cites four objections to the construction of "payment amount" in the Special Master's Report: 1) the claim language at issue was not added as a response to a rejection based on that claim term; 2) a single identified statement by prosecution counsel which Autoscribe argues does not contain an express

disclaimer; 3) the Special Master's construction ignores the antecedent basis principle; and 4) the patent specification allegedly discloses embodiments where the secure server does not obtain the money. Autoscribe's first and second objections misunderstand the Special Master's Report. In particular, the Special Master found that, in the context of the claims, specification, and prosecution history, the term "payment amount" in the obtaining and forwarding clauses must be understood as obtaining and forwarding actual money. Otherwise, the claims themselves, and arguably the entire patent, are rendered meaningless. Autoscribe's attempt to pinpoint lack of disclaimer or definition in the very final claim amendment during prosecution of the '621 Patent ignores the entire bulk of evidence in the claim language, specification, and remaining prosecution history that clearly identifies the meaning of the claim terms. Autoscribe's third objection hinges on the use of the antecedent basis principle as a get-out-of-jail-free card, completely ignoring the case law and the numerous fallacies in its own proposed construction. Autoscribe's final objection misapplies established claim construction canon and attempts to read out express limitations which are included in the claim language.

### A. Construction of "payment amount" in the "obtaining" and "forwarding" clauses is necessary.

As an initial matter, until filing its Objection to the Special Master's Report, Autoscribe had proposed its own construction for the claim terms "obtain[ing] the [second] payment amount" and "forward[ing] at least a portion of the [second]

payment amount" which are contained in claims 1, 2, 8, 9, 15, 23, and 25. *See* Dkt. 98, 140, 141, 152. It is only in light of the Special Master's agreement with M&A's proposed construction that Autoscribe has withdrawn its prior construction and resorted to its current "plain and ordinary" position. However, it is clear that while Autoscribe argues that the terms need not be construed beyond their "plain and ordinary meaning," Autoscribe has clearly put forth a proposed "plain and ordinary meaning"— that "payment amount" should only be understood as information about the transaction. Conversely, M&A's proposed construction, which was adopted by the Special Master, construes "payment amount" as the actual money required for payment in both the "obtaining" and "forwarding" clauses consistent with the context of the claims and the specification's description.

There is a fundamental dispute between the parties regarding the meaning of the term "payment amount" in the "obtaining" and "forwarding" clauses of the asserted claims. Putting aside the lack of intrinsic evidence that the plain and ordinary meaning of "payment amount" is information, it is the duty of the Court to resolve disputes about the scope of this claim term. *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016). The ultimate question of claim construction is a legal question for the Court to resolve. *Id.* at 1318 (internal citations omitted). The Federal Circuit has firmly established that a fundamental dispute of claim scope between the parties must be decided by the Court and not left

to the jury. *See id.*; *see also*, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008).

In *O2 Micro*, the parties presented a dispute to the district court regarding the scope of the asserted claims, namely, "What do the patents mean when they say that the feedback signal controls power 'only if said feedback signal is above a predetermined threshold'?" *Id.* The district court held that the term "only if" needed no construction because it had a "well-understood definition," and in doing so, failed to resolve the parties' dispute. *Id.* The Federal Circuit reversed the district court's holding because "[a] determination that a claim term 'needs no construction' or has the 'plain and ordinary' meaning may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute." *Id.* Where the district court failed to adjudicate the parties' dispute regarding the proper scope of the claim term, the parties in *O2 Micro* had thereafter improperly presented their claim construction arguments to the jury. *Id.* at 1362. The issue of claim construction is for the Court to decide, not the jury. *Id.*; *see also Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury. In order to fulfill this obligation, the court must see to it that disputes concerning the scope of the patent claims are fully resolved.") (citations omitted); *TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*,

8

629 F. App'x. 916, 938 (Fed. Cir. 2015) ("[W]hen a determinative claim construction dispute arises, a district court must resolve it.").

Here, the parties clearly dispute the meaning of "payment amount" in the "obtaining" and "forwarding" clauses. Where such a fundamental dispute exists between the parties, the Court is duty-bound to resolve the issue before presentation to the jury. *See O2 Micro*, 521 F.3d at 1362. Autoscribe cannot avoid a construction of this term by hiding behind the concept of "plain and ordinary meaning."

### B. Autoscribe's Objections misunderstand both M&A's proposed construction and the Special Master's Report.

Autoscribe's first objection is that the relevant claim language was added in response to an interview between the Examiner and prosecution counsel, which focused on subject matter eligibility under 35 U.S.C. § 101 and was unrelated to the scope of the term "payment amount." Dkt. 155 at 2. Here, Autoscribe too narrowly focuses on the final amendment to the claim language, which re-added the obtaining element and the term "amount" to the forwarding clause. It has never been M&A's position that this final amendment redefined the term "payment amount" or disclaimed some claim scope which was otherwise more broadly included in the specification. Rather, this final amendment reflects the scope of the patent as claimed by the Patentee— that processing a payment involves the secure server obtaining and forwarding actual money. In particular, the '621 Patent claims a secure server providing API functions to the merchant server that:

9

- ○ process the payment by
  - ▪ generating and transmitting an electronic request requesting the payment amount;
  - ▪ obtaining the payment amount; and
  - ▪ forwarding at least a portion of the payment amount.

Dkt. 139-11 at ASC000664. These three steps, as recited above by prosecution counsel during prosecution, are mirrored in the language of the claim. In fact, the obtaining element and "amount" which are, in part, the subject of this final amendment have existed since the very first version of the patent claims. *See* Dkt. 139-3 at ASC000033 ("storing the financial amount information obtained from the payer; ***obtaining the amount of the payment*** from the payer by processing the payment using the financial account information obtained from the payer; and ***forwarding at least a portion of the amount of the payment*** to the payee"). It has always been the case that the Patentee was attempting to claim a secure server which obtained and forwarded actual money.

The context of the claim language, the specification, and the prosecution history support this claim interpretation— that the secure server processes the payment by "obtaining … the payment amount" and "forwarding … the payment amount" where "payment amount" is understood as the actual money. The Special Master's Report includes a detailed analysis of this support. Dk. 154 at 16-17, 19-20. For example, a comment made during the aforementioned final amendment illuminates that there is actual money being obtained and forwarded by the secure server. Autoscribe's second objection actually identifies this comment, which is

10

transcribed below:

> "I called this request (from the secure server to the entity that causes the payment amount to be transferred) an 'electronic request' to differentiate it from the 'payment transaction instruction' (from the merchant server to the secure server) described in paragraph [0041] of the spec and recited in the merchant server claims."

Dkt. 139-9 at ASC00527.

Autoscribe's second objection merely includes this prosecution history comment and makes the conclusory statement that "[t]he evidence clearly demonstrates both the absence of disclaimer and the absence of any clear and unmistakable basis for redefining the term." Dkt. 155 at 5. As an initial matter, Autoscribe assumes—without intrinsic support—that construing "payment amount" to mean money constitutes redefining the term. As set forth above, this is untrue. The very purpose of the invention and the claim language itself makes clear that "payment amount" means money. The Special Master's recommendation is not a redefinition requiring evidence of disclaimer.

Further, Autoscribe again misunderstands M&A's argument and the Special Master's Report. The comment above has been discussed at length in M&A's briefing, by M&A at the Claim Construction Hearing, and in the Special Master's Report as it supports the interpretation of obtaining/forwarding the "payment amount" as obtaining/forwarding the money. In particular, the comment by prosecution counsel is specifically addressing the first step of the "processing a

payment" limitation: generating and transmitting an electronic request requesting the payment amount. *See* Dkt. 139-9 at ASC00527. Prosecution counsel states that "this request (**from the secure server** to the entity that causes the payment amount to be transferred)..." *Id.* (emphasis added). As understood directly from the final claim language, this is a request "requesting the payment amount *from the financial account*." '621 Patent, Claim 1 (emphasis added). Put plainly, a request is generated by the secure server to the financial account of the payer requesting the payment amount from the financial account of the payer and causing the payment amount to be transferred *from the financial account of the payer to the secure server*. The entity that causes the payment amount to be transferred is the financial account of the payer. And this entity is transferring the payment amount to the secure server. The secure server then obtains the payment amount and forwards a portion of the payment amount to the merchant.

M&A's proposed construction is the only reasonable interpretation of the claim language. There is no dispute that prosecution counsel's comment made in amendment makes it clear that the *financial account* of the payer *must transfer the payment amount* to process the payment. Otherwise, no money would ever change hands, which is the entire purpose of the invention. The financial account must transfer the payment amount to the secure server because the claim language is clear that the secure server then obtains and forwards a portion of the payment amount.

Under Autoscribe's proposed "plain and ordinary meaning," the payment amount is nothing more than information about the transaction value. As such, the secure server would "process a payment" merely by requesting the transaction value (which it already possesses based on earlier recited limitations), obtaining the transaction value (again, which it already possesses), and forwarding a portion of the transaction value to the merchant (who also already possesses the value of the transaction as the merchant). Under Autoscribe's proposed construction, the entire "processing the payment" element is rendered superfluous, which the Special Master expressly sought to avoid. Dkt. 154 at 19 (citing *Wasica Fin. GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1288 n.10 (Fed. Cir. 2017) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous.").

For the reasons above, Autoscribe's first and second objections misunderstand the Special Master's Report and further fail to provide any detailed analysis of how its own "plain and ordinary" meaning could be understood within the context of the claims and specification.

## C. Because it is clear from the intrinsic evidence that "payment amount" has different meanings throughout the claim, antecedent basis does not control.

Autoscribe's third objection—that the claim construction canon of antecedent basis requires finding payment amount means information every time it is used in the claim—puts form over substance. The parties agree that earlier in the claims, the

13

'621 Patent uses "payment amount" to refer to information about the value of the transaction, requiring the secure server's software to receive, from the merchant server, "at least one data element associated with the payer and a ***payment amount*** from the payer to the payee." *See* '621 Patent, Claim 1.

While the Special Master recognized that generally "a word or phrase ***used consistently*** throughout a claim should be interpreted consistently," this canon of claim construction is not absolute. *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1465 (Fed. Cir. 1998) (emphasis added). The Special Master also recognized that the '621 Patent does not use "payment amount" consistently in the claims and that "where it is clear from the intrinsic evidence that the term has different meanings at different portions of the claims, the claim term can be construed differently throughout the claim." Dkt. 154, p. 15 (citing *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318-1319 (Fed. Cir. 2001)).

The fact that the earlier use of "payment amount" provides the antecedent basis for the later use of "payment amount" does not change this analysis. "Although we agree with the district court's initial assumption that a single 'claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent,' *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001), the patentee's mere use of a term with an antecedent does not require that both terms have the same meaning." *Microprocessor Enhancement*

*Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) ("Indeed, the claims' apparent nonsensical reading under a uniform construction of "condition code" is indicative of the ease of determining the appropriate meaning of each use of the term from its context.").

It is clear, both from the structure of the claims and the intrinsic evidence, that the term "payment amount" has different meanings at different portions of the claims and therefore, should be construed differently throughout the claims. The Special Master's Report discusses in detail why "payment amount" should be interpreted differently in the processing the payment limitation to avoid rendering the claim language superfluous (Dkt. 154 at 19-20) or entirely incomprehensible. *Id.* at 16 (discussing why "payment amount" must be something that can be apportioned). The general principle that claim terms should be interpreted consistently is not intended to create such a nonsensical result.

Autoscribe expends significant energy discussing the antecedent basis of the term "payment amount" yet does not address the internal inconsistencies its own proposed construction creates. For example, the most glaring issue created by Autoscribe's proposed construction is for the forwarding element of the "processing a payment" limitation. In particular, the forwarding element requires "forwarding at least **a portion of the second payment amount.**" Autoscribe is proposing that "payment amount" can be understood as "information about the transaction" but

does not explain how a secure server can forward a portion of information. This question was raised in briefing, and in the Markman hearing. Yet Autoscribe has provided no answer which is consistent with its own proposed construction. Dkt. 154 at 16 ("When discussing this issue, counsel for Autoscribe acknowledged that the reason for the 'at least a portion' language in the claim is because the secure server keeps a portion of the transactions as a fee. [Ex. B,] Claim Construction Tr., 70:9-71:14. Autoscribe makes clear that money, rather than any transaction value information, is being subdivided, with a portion going to the merchant and a portion going to the operator of the secure server.")

Autoscribe cites no case law in support of its position that the doctrine of "antecedent basis" *requires* the Court to construe all uses of a claim term consistently with the first use of the term within the claim. As stated above, the Special Master correctly applied the Federal Circuit's case law permitting different constructions, even where these different constructions would conflict with the use of an antecedent basis, where it is clear from the intrinsic evidence that the term has different meanings at different portions of the claims. *Fin Control Sys.*, 265 F.3d at 1318-1319; *Microprocessor Enhancement*, 520 F.3d at 1375-1376 (allowing different constructions of the same term especially when any uniform construction would result in a "nonsensical reading" of the claim).

The Federal Circuit has additionally held that the absence of explicit

antecedent basis is not fatal. *See Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) (citing *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001)) ("despite the absence of explicit antecedent basis, 'If the scope of a claim would be reasonably ascertainable by those skilled in the art, then the claim is not indefinite.'") Lack of antecedent basis cannot justify adopting Autoscribe's proposed claim construction, which is contrary to the context of the claims, the specification, and the prosecution history and would result in a nonsensical reading of the claim.

> **D.    Autoscribe misapplies the rule preventing importation of limitations from the specification and attempts to read out limitations included in the claim.**

Autoscribe's final objection asserts that the Special Master's proposed construction inserts a limitation which is not called for *by the specification.* Dkt. 155 at 7 (citing '621 Patent 9:12-19). However, Autoscribe's argument ignores that the claim language itself prescribes the method by which the secure server makes the proceeds available to the merchant— by obtaining the proceeds from the financial account and forwarding at least a portion of those proceeds to the merchant.

Here, Autoscribe misapplies the rule from *Phillips v. AWH Corp*. The Federal Circuit in *Phillips* held that a limitation from the specification cannot be imported into the claims. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (*en banc*). Here, Autoscribe argues that a limitation included in the claims must be

removed because it is not included in the specification. It is the claims, not specification embodiments, that define the scope of patent protection. *Kara Technology Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).

Further, Autoscribe is incorrect when it states the Patentee did not contemplate that a payment would be processed by a secure server obtaining and forwarding money. The Special Master's report recognizes that the specification and claim language are consistent with this interpretation. Dkt. 154 at 17 (citing '621 Patent, 9:16-19.)

The context of the claim language and prosecution history are unambiguous—processing a payment, as claimed in the patent, requires the secure server obtain and forward actual money. Autoscribe cannot attempt to broaden the claims beyond the limitations which are expressly claimed.

## IV.   CONCLUSION

In consideration of the claim language, the specification, and the prosecution history, the Special Master has determined how a person of ordinary skill in the art would understand the claim terms. Autoscribe's Objections provide no meaningful reason why this Court should reject the Special Master's Report nor do the Objections support Autoscribe's new position that the forwarding and obtaining term needs no construction. The Court should adopt the Special Master's recommendation that the "obtaining" and "forwarding" terms be construed as

"obtain[ing] the money required for the [second] payment" and "forward[ing] at least a portion of the money required for the [second] payment."

Dated: May 28, 2025

/s/ Marron E. Frith

Richard Miller
Georgia Bar No. 065257
Alan White
Georgia Bar No. 410546
Ballard Spahr LLP
999 Peachtree Street NE, Suite 1600
Atlanta, Georgia 30062
Telephone: 678-420-9340
Email: millerrw@ballardspahr.com
       whiteda@ballardspahr.com

David H. Harper (*pro hac vice*)
Texas Bar No. 09025540
david.harper@haynesboone.com
Stephanie N. Sivinski (*pro hac vice*)
Texas Bar No. 24075080
stephanie.sivinski@haynesboone.com
Marron E. Frith (*pro hac vice*)
TX Bar No. 24137884
marron.frith@haynesboone.com
Jamie Raju (*pro hac vice*)
TX Bar No. 24095717
jamie.raju@haynesboone.com
HAYNES AND BOONE, LLP
2801 N. Harwood Street
Suite 2300
Dallas, Texas 75201
(214) 651-5000 (telephone)
(214) 200-0615 (fax)

**COUNSEL FOR DEFENDANT M&A VENTURES, LLC**

19

## **CERTIFICATE OF SERVICE**

I hereby certify that counsel of record was served this Notice of Service via the Court's ECF system on May 28, 2025.

*/s/ Marron E. Frith*

Marron E. Frith

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in 14-point Times New Roman font.

*/s/ Marron E. Frith*

Marron E. Frith